# EXHIBIT 1

# EXHIBIT 1.a

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

LAUREN SPURLOCK; HEATHER SMITH; and
SHAWN ZMUDZINSKI, individually and on
behalf of all others similarly situated,

                *Plaintiffs,*

v.

WEXFORD HEALTH SOURCES,
INCORPORATED,

                *Defendant.*

**Case No.** 3:23-cv-00476

Honorable Robert C. Chambers

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Lauren Spurlock, Heather Smith, and Shawn Zmudzinski serve Defendant Wexford Health Services, Incorporated. with the following Interrogatories. Responses must be served on Plaintiffs within thirty (30) days after service thereof. Plaintiffs request that such responses be served via electronic mail on all counsel of record. The instructions and definitions set forth below shall govern the interrogatories as well as your responses to them.

## INSTRUCTIONS

1.      These Interrogatories are intended to be continuing in nature. You shall promptly file supplemental responses if you obtain additional responsive documents or information, or discovers that information produced is incomplete or incorrect.

1

2.    For information withheld on a claim of privilege or immunity, specify the following:

    a.  A general description of the nature and subject matter of the information;

    b.  The basis for your claim of privilege or immunity;

    c.  The identity of the person(s) holding the privilege; and

    d.  The job title of every person named in subsection (c) above.

3.    If an Interrogatory calls for numerical information or dates when an event took place, and the precise information is not known, provide the best estimate available and the basis for the estimate.

4.    If Defendant cannot fully answer an Interrogatory, provide as full an answer as possible. State the reason for the inability to answer fully, and give any information, knowledge, or belief which you have regarding the unanswered portion, including the name(s) and address(es) of person(s) or organization(s) having further information and their contact information.

5.    If Defendant objects to any Interrogatory or any portion of an Interrogatory, identify the portion to which you object, state the basis for the objection, and respond to the remainder.

6.    If Defendant contends that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any Interrogatory, then as to that Interrogatory:

    a.  Provide all information that is available without unreasonable burden; and

    b.  Describe with particularity the efforts made to secure the information, the provision of which Defendant claims would be an unreasonable burden, and the burden that would be imposed by the production of such information.

7.    Respond to each Interrogatory separately. Do not reference an earlier response to

an earlier Interrogatory unless your response is identical.

8.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given the broadest meaning permitted under Rule 26 of the Federal Rules of Civil Procedure except where such words have a specific custom and usage definition in your trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which you are aware. In construing the inquiry and Interrogatories herein, the singular shall include the plural and the plural shall include the singular and a masculine, feminine, or neutral pronoun shall not exclude the other genders.

## DEFINITIONS

1.      "Any" shall mean one or more.

2.      "Complaint" shall mean the operative class action complaint filed in the United States District Court for the Southern District of West Virginia Case Number No. 3:23-cv-00476.

3.      The term "Employee" means any person who performed services for Wexford Health Sources, Incorporated, or their affiliates or agents regardless of classification and non-exclusively includes all persons referred to as "employee," "subcontractor," "independent contractor," "representative" or "agent."

4.      "Plaintiffs" shall mean the Plaintiffs, Lauren Spurlock, Heather Smith, and Shawn Zmudzinski, in the above-titled action.

1.      "MOUD" shall mean "medication for opioid use disorder" and shall refer to any medication that has been approved by the FDA to treat opioid use disorder, including methadone, buprenorphine, naltrexone, and Suboxone. It shall include any terms that Defendant has used internally to refer to the provision of this medication, including, without limitation, "medication-assisted treatment" or "MAT."

3

5.      "OUD" shall mean "opioid use disorder." Both "OUD" and "opioid use disorder" will include any synonymous term, including (without limitation) "opioid addiction."

6.      "Person" shall mean individuals or entities of any type, including, but not limited to, natural persons, governments (or any agencies thereof), quasi-public entities, corporations, partnerships, groups, mutual or joint ventures and other forms of organizations or associations, and any other legal entities and divisions, departments, and units thereof.

7.      The terms "document" and "documents" should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of every writing or record of every type and description, whether in final or draft form, as well as any attachment thereto or enclosure therewith, including but not limited to all written, typewritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature , any form of collected data for use with electronic data processing equipment, any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in the possession, control or custody of Wexford, its attorneys, agents, and representatives regardless of its physical location. The term "document" includes without limitation correspondence, memoranda, stenographic or handwritten notes, electronic documents of any kind, e-mail, website content, faxes, voice recordings, video recordings, reports, computer records or printouts, files, disks, tapes, print-outs, agreements, communications, telegrams, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, calendars, reports, bids, proposals, licenses, financial statements, surveys, drawings, spreadsheets, sales estimates or reports, spreadsheets, graphs, charts, maps, photographs,  notebooks, opinions

4

or reports of consultants, forms, brochures, pamphlets, advertisements, circulars, press releases, drafts, letters, microfilm, microfiche, any marginal comments appearing on any document, and all other writings.

8.    The term "communication" or "communications" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideals, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, USB drive, other removable or transportable media, file sharing, radio, video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

9.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.    The phrase "refer to" "referring to" "relate to" or "relating to" includes pertain to, concern, regard, reflect, depict, describe, evidence, embody, mention, state, deal with, contain, constitute, or having any logical or factual connection with the subject matter identified in the discovery request in whole or in part.

11.    The term "identify," "identification," or "identifying" means:

    a.    When referring to a natural person, shall mean to set forth, to the fullest extent possible, the person's full name, present or last known home address and

5

telephone number, present or last known business address and telephone number, occupation, job title, job description, any present or former relationship to any of the parties to this action and the years of employment;

b.  When referring to an entity other than a natural personal, shall mean to set forth to the fullest extent possible, the full name and present or last known address of the principal place of business and the nature of the organization, if known, (*e.g.*, partnership, corporation, etc.), of the entity to be identified;

c.  When used with respect to a document, shall mean to provide a copy of the document and identify by name and address the individual having custody of the document, and to describe the document by (a) date; (b) author; (c) addressee; (d) type of document (letter, memo, note, etc.); (e) subject matter; and (f) number of pages.

d.  When used with respect to a communication, shall mean to state whether the communication was written or oral. If written, set forth, to the fullest extent possible, the document or documents in which it was contained; state the names and addresses of all individuals who received it and all individuals from whom it was received, if any; and describe the subject matter of the communication. If oral, relate the substance of the communication and whether it was by telephone or in person; state the names and addresses of all persons present during each communication and the place where each communication occurred; or, in the case of a telephone communication, state the location of each party to the conversation. State whether any recording of the communication exists or existed. If such recording once existed, but no longer exists, state the date on

6

which it was destroyed and the name and address of the person(s) who destroyed it.

12.     "Describe," "state," "explain," "description," "statement," or "explanation" means to set forth fully and unambiguously every fact that relates to the answer called for by the request of which you have knowledge and to identify each individual with knowledge or information that relates to your answer.

13.     "Describe," "state," "explain," "description," "statement," or "explanation," when used in reference to a factual or legal contention, shall mean to describe the full factual and legal basis for the contention, to identify all documents either supporting or contradicting the contention, and to identify all persons that Defendant has reason to believe is knowledgeable about each such fact or document.

14.     "Reasons" or "basis" when used in reference to an action, belief, or decision, shall mean any and every factual or legal ground, explanation, or justification or motivating factor(s) for the action, belief, or decision.

15.     The term "You" "Your"  or "Wexford" shall refer to Defendant Wexford Health Sources, Inc. and includes any and all predecessors or successors in interest, local, regional, national and/or executive offices, divisions, or affiliates (foreign and domestic), segments, or divisions thereof, any of its subsidiaries, special purpose entities, divisions or affiliates, and all of their present and former officers, directors, employees, consultants, agents, directors, accountants, attorneys, advisors, any other person compensated by you (regardless of whether such compensation is based in whole or in part on commission or some other measures of performance or otherwise and regardless of whether considered or classified as independent contractors), and all other persons acting or purporting to act on their behalf, direction, or control.

## INTERROGATORIES

1.      In light of Defendant's denial in its Answer (see, e.g., paragraphs 6, 132, and 177) that Wexford "maintains a policy that denies MOUD to treat OUD," describe Defendant's policies or procedures with respect to treating OUD with MOUD from January 1, 2017 to the present, as well as how such policy was determined and developed (including who participated in the same), any reason or justification for the same, and state all facts that You purport support Defendant's denial of such a policy, as well as any facts that support Defendant's denial of statements in its own policy manual. Your response should include (without limitation) any and all policies or procedures regarding Wexford's provision of MOUD, denial of MOUD, or opioid withdrawal from January 1, 2017 to the present, including who was eligible to be prescribed MOUD and under what circumstances. Your response should also include a description of Wexford's "detox protocol" and "medically supervised detoxification program," as referenced in the Medical Guidelines reproduced in Plaintiffs' Complaint at paragraph 133 and on Wexford's website cited in paragraph 134 of Plaintiffs' Complaint respectively, as well as citation to any portions of Wexford's Medical Guidelines that You believe informs how the cited portion at paragraph 133 should be interpreted or understood so as to "be read in its entirety," as asserted in paragraph 132 of Wexford's Answer.

**ANSWER:**

2.      Identify all persons who participated in the decision to create and/or implement Wexford's policies and/or practices regarding provision of MOUD, denial of MOUD, and opioid withdrawal from January 1, 2017 to the present, and for each such person, state (in addition to the items in 11.a above) that person's affiliation at the time of such participation (including whether that person was a Wexford employee or contractor or affiliated with a third party), summarize the

8

participation of and information you believe to be known to that person, and state whether you have taken any written or recorded statements from that person regarding the Lawsuit.

**ANSWER:**

3.      Identify every jail or prison with which Wexford has contracted to provide medical services from January 1, 2017 to the present, as well as the dates during which time Wexford provided such services, and for each such facility/date range, provide the following:

a.  Identify the Bates numbers for each contract(s) with Wexford associated with the facility/date range identified;

b.  By facility/date range identified, describe generally the medical intake process, including who conducts the intake (e.g., an RN), what questions are asked, and how that information is stored, and identify the Bates numbers for any exemplar intake forms used at each facility/date range identified;

c.  By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation, or other tool that Wexford used to screen for, identify, assess, or document an incarcerated individual's history of opioid dependence, OUD, illicit opioid use, or use of prescription or non-prescription opioids (including MOUD) (whether at intake or while under the care of Wexford), such as (without limitation) the Texas Christian University (TCU) Drug Screen or the Rapid Opioid Dependence Screen (RODS);

d.  By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation or other tool that Wexford used to screen for, identify,

9

assess, document, or monitor opioid withdrawal (and identify the Bates number of exemplars), such as (without limitation) the Clinical Opiate Withdrawal Scale (COWS);

e.  By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford maintained lists of, reported, recorded, or otherwise tracked (and identify by Bates number exemplars of each such list, report, record, or other tracking document) incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or those who were using prescription or non-prescription opioids (including MOUD) (whether at the time of intake or while under Wexford's care); who were offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who are withdrawing from opioids and any related symptoms or deaths relating to the same; or who have a history of taking MOUD;

f.  By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford has maintained lists of, reported, recorded, or otherwise tracked the provision of medication for opioid use disorder to incarcerated individuals (and identify by Bates number exemplars of each such list, report, record, or other tracking document);

g.  By facility/date range identified from January 1, 2017 to the present, describe any reports relating to opioids that Wexford has run or prepared for internal purposes or to provide to third parties, including but not limited to the states and/or municipalities with which it contracts, identifying incarcerated

10

individuals who have a history of opioid dependence, OUD, or illicit opioid use, or were using prescription or non-prescription opioids (including MOUD) at the time of such report; who have been offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who have been identified as withdrawing from opioids; or who have a history of taking MOUD;

h. By facility/date range identified from January 1, 2017 to the present, describe how each of the prisons or jails for which Wexford provides or provided medical care maintain their electronic medical record system, including (without limitation) how that system is operated and how information is uploaded to the system;

**ANSWER:**

4.    Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:

a. Case name and number;

b. Jurisdiction in which the case was filed;

c. Whether the case is pending or closed;

d. If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);

e. If the case was tried to verdict, a summary of the verdict including any damages award; and

11

f.  If the case was settled or resolved through mediation or arbitration, a summary

of the resolution including any monetary payment.

**ANSWER:**

5.  Identify any and all training provided to Wexford staff concerning opioid use

disorder, opioid dependence, opioid withdrawal, or illicit opioid use, including:

a.  The title of the training, if any;

b.  A brief summary of topics covered by the training;

c.  The date(s) said training was provided;

d.  Where and to whom the training was offered;

e.  The individual(s) responsible for developing and/or leading said training; and

f.  The location of any records in the Defendants' possession, custody, or control

that relate or refer to said training.

**ANSWER:**

6.  Identify all persons who prepared, supplied information for, or in any way assisted

with the preparation of the answers to any of Plaintiffs' Interrogatories. For each person, identify

the items set forth in 11.a above and designate the Interrogatory for which he, she, or they provided

information.

**ANSWER:**

7.  For each of Your affirmative defenses set forth in Your Answer to the Complaint,

state by affirmative defense the basis for each such defense, including all facts supporting such

defense. Your response should include (without limitation), the following:

a.  Any facts or law relied upon to support the fourth and ninth affirmative defenses

that Defendant acted in accordance with "clearly established law" or "clearly

12

established duty, standards, laws, regulations, or rules," including which duty, standards, laws, regulations, and rules Defendant is referring to in these defenses and what "[j]ustification" Defendant is referring to as having existed for its actions.

b. Any facts or law relied upon to support the fifth affirmative defense regarding injuries caused by "negligence, intentional acts, criminal acts, or other wrongful conduct of persons, firms, or corporations," including which persons, firms, and corporations Defendant is referring to and what negligence, intentional acts, criminal acts, and wrongful conduct those persons, firms, and corporations allegedly committed.

c. Any facts relied upon to support the seventh and seventeenth affirmative defenses regarding Wexford's asserted immunities and how each form of immunity applies to Plaintiffs' claims.

d. All facts you assert support Plaintiffs having "unclean hands" as asserted in Defendant's eleventh affirmative defense.

e. Any facts or law relied upon to support the thirteenth affirmative defense, including identifying the "prescribed or known standard of action" to which Defendant refers and the origin thereof.

f. The factual and legal basis for your assertion in Wexford's fourteenth affirmative defense that Plaintiffs have failed to mitigate their damages.

g. Any facts or law relied upon to support the eighteenth affirmative defense of privilege, including identifying which specific privilege or privileges Defendant argues applies to which of Plaintiffs' claim or claims.

13

h.  The reasons for any decisions made by You referenced in Defendant's nineteenth affirmative defense.

i.  Identification of any party, individual, or entity that Defendant may have a legal right of indemnification or contribution from, as set forth in Defendant's twenty-third defense, and all facts supporting such potential indemnification or contribution.

j.  Any facts that You believe evidence spoliation as asserted in Defendant's twenty-fourth affirmative defense.

k.  Any facts or law relied upon to support the twenty-seventh affirmative defense of unconstitutional punitive damages under the Fifth, Eighth, and Fourteenth amendments.

l.  Any collateral source payments supporting Defendant's thirty-second affirmative defense and all facts supporting the assertion of this defense.

m.  Any superseding or intervening causes supporting Defendant's thirty-third affirmative defense and all facts supporting the assertion of this defense.

n.  A description of the legal and factual basis for your assertion that Plaintiffs lack standing, and all facts supporting such assertion made in Defendant's thirty-seventh affirmative defense.

o.  Any facts or law relied upon to support Defendant's claimed thirty-eighth through fortieth affirmative defenses that the class is not properly brought as a class action, including that Plaintiffs are not proper class representatives and that the facts are not sufficient to certify a class.

**ANSWER:**

14

8.      State all facts relied upon to or that support Defendant's denial of paragraphs 9, 17-19, 90, 121, 123, 133, 134, 137, 138, 159, 165, and 181 of the Complaint, including, without limitation, the factual basis for Defendant's denial of the statements in its own policy manual and the factual basis for Defendant's denial that it has a policy or practice to deny MOUD in the prisons and jails it serves. Your Response should set forth such facts by the paragraph number of Wexford's Answer to the Complaint.

**ANSWER:**

9.      Given that Defendant has denied in paragraph 17 of its Answer to the Complaint that Wexford refused to provide Plaintiff Smith with her prescribed MOUD, describe what Wexford did (if anything) with respect to Ms. Smith's treatment for OUD following Defendant's admission that Ms. Smith brought her Suboxone with her to South Central Regional Jail, where Defendant admits Wexford served as the medical contractor, and the prescription for which Defendant admits it verified.

**ANSWER:**

Dated: December 8, 2023

Respectfully submitted,

/s/ W. Jesse Forbes
W. Jesse Forbes, Esq. (WVSB# 9956)
**FORBES LAW OFFICES, PLLC**
1118 Kanawha Blvd. East
Charleston, WV 25301
Telephone: (304) 343-4050
Facsimile: (304) 343-7450
wjforbes@forbeslawwv.com

L. Danté diTrapano (W.Va. Bar No. 6778)
**CALWELL LUCE DITRAPANO PLLC**
Law and Arts Center West
500 Randolph Street
Charleston, West Virginia 25302
Telephone: (304) 343-4323

15

Facsimile: (304) 344-3684
dditrapano@cldlaw.com

Anna C. Haac (*pro hac vice*)
Lauren A. Kuhlik (*pro hac vice*)
Gemma Seidita (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
ahaac@tzlegal.com
lkuhlik@tzlegal.com
gseidita@tzlegal.com

Julie S. Selesnick (*pro hac vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue NW, Suite 300
Washington, DC 20006
Telephone: (202) 221-5279
Facsimile: (215) 875-4604
jselesnick@bm.net

Natalie Lesser (*pro hac vice* forthcoming)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3079
Facsimile: (215) 875-4604
nlesser@bm.net

*Counsel for Plaintiffs and the Proposed Classes*

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated, | **Case No.** 3:23-cv-00476 |
| *Plaintiffs,* | Honorable Robert C. Chambers |
| v. | |
| WEXFORD HEALTH SOURCES, INCORPORATED, | |
| *Defendant.* | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 8, 2023 the foregoing Plaintiff's First Set of Interrogatories to Defendant Wexford Health Sources, Incorporated. was served upon the following counsel by Electronic Mail and U.S. Mail, postage prepaid in accordance with Rule 5 of the Federal Rules of Civil Procedure:

Jordan K. Herrick (WV Bar #11128)
Harrison M. Cyrus (WV Bar #12731)
**BAILEY & WYANT, PLLC**
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: (304) 345-4222
F: (304) 343-3133

*Attorneys for Defendant*

/s/ W. Jesse Forbes
W. Jesse Forbes, Esq. (WVSB# 9956)
**FORBES LAW OFFICES, PLLC**
1118 Kanawha Blvd. East
Charleston, WV 25301
Telephone: (304) 343-4050
Facsimile: (304) 343-7450
wjforbes@forbeslawwv.com

# EXHIBIT 1.b

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN  SPURLOCK;  HEATHER
SMITH;  and  SHAWN  ZMUDZINSKI,
individually  and  on  behalf  of  all  others
similarly situated,

    **Plaintiffs,**

**v.**

                                          **Civil Action No. 3:23-cv-00476**
                                          **Honorable Robert C. Chambers**

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    **Defendant.**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

**NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K. Herrick,

Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C., and

pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the following

responses to **Plaintiffs' First Set of Interrogatories** without waiving any objection this Defendant

may have as to the relevancy or admissibility of any of the information contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

A.      The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate.  Said

responses are made without prejudice to this Defendant's right to rely upon subsequently discovered

facts or evidence.

B.      No incidental or implied admission of fact by this Defendant is made by the responses

below.  The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may

1

not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.  However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.  This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

2

H.      This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.      This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## **INTERROGATORIES**

1.      In light of Defendant's denial in its Answer (see, e.g., paragraphs 6, 132, and 177) that Wexford "maintains a policy that denies MOUD to treat OUD," describe Defendant's policies or procedures with respect to treating OUD with MOUD from January 1, 2017 to the present, as well as how such policy was determined and developed (including who participated in the same), any reason or justification for the same, and state all facts that You purport support Defendant's denial of such a policy, as well as any facts that support Defendant's denial of statements in its own policy manual. Your response should include (without limitation) any and all policies or procedures regarding Wexford's provision of MOUD, denial of MOUD, or opioid withdrawal from January 1, 2017 to the present, including who was eligible to be prescribed MOUD and under what circumstances. Your response should also include a description of Wexford's "detox protocol" and "medically supervised detoxification program," as referenced in the Medical Guidelines reproduced in Plaintiffs' Complaint at paragraph 133 and on Wexford's website cited in paragraph 134 of Plaintiffs' Complaint respectively, as well as citation to any portions of Wexford's Medical Guidelines that You believe informs how the cited portion at paragraph 133 should be interpreted or understood so as to "be read in its entirety," as asserted in paragraph 132 of Wexford's Answer.

3

**ANSWER:**    **In lieu of describing these policies, please see the following:**

1.    ADDICTION MEDICINE -- GLOBAL (2024) 1.3, WEX00000001-WEX00000144;

2.    MEDICAL GUIDELINES -- WEST VIRGINIA (2020) 4.20, WEX00000145-WEX00000515;

3.    MEDICAL GUIDELINES -- ALABAMA (2018) 5.23, WEX00000854-WEX00001195;

4.    MEDICAL GUIDELINES -- ALABAMA (2019) 2.6, WEX00001196-WEX00001540;

5.    MEDICAL GUIDELINES -- ALABAMA (2020) 4.20, WEX00001541-WEX00001906;

6.    MEDICAL GUIDELINES -- ALABAMA (2021) 5.24, WEX00001907-WEX00002314;

7.    MEDICAL GUIDELINES -- GLOBAL (2017) 6.27, WEX00002315-WEX00002630;

8.    MEDICAL GUIDELINES -- GLOBAL (2019) 2.6, WEX00002631-WEX00002976;

9.    MEDICAL GUIDELINES -- GLOBAL (2020) 4.20, WEX00002977-WEX00003344;

10.    MEDICAL GUIDELINES -- GLOBAL (2021) 5.24, WEX00003345-WEX00003763;

11.    MEDICAL GUIDELINES -- GLOBAL (2023) 1.5, WEX00003764-WEX00004229;

12.    MEDICAL GUIDELINES -- GLOBAL (2024) 1.5, WEX00004230-WEX00004635;

13.    MEDICAL GUIDELINES -- ILLINOIS (2017) 10.11, WEX00004636-WEX00004957;

14.    MEDICAL GUIDELINES -- ILLINOIS (2018) 2.15, WEX00004958-WEX00005298;

15.    MEDICAL GUIDELINES -- ILLINOIS (2019) 1.18, WEX00005299-WEX00005645;

16. **MEDICAL GUIDELINES -- ILLINOIS (2020) 10.19, WEX00005646-WEX00006041;**

17. **MEDICAL GUIDELINES -- ILLINOIS (2021) 3.2, WEX00006042-WEX00006415;**

18. **MEDICAL GUIDELINES -- ILLINOIS (2022) 1.7, WEX00006416-WEX00006829;**

19. **MEDICAL GUIDELINES -- ILLINOIS (2022) 5.2, WEX00006830-WEX00007307;**

20. **MEDICAL GUIDELINES -- ILLINOIS (2024) 1.5, WEX00007308-WEX00007715;**

21. **MEDICAL GUIDELINES -- JAILS (2017) 6.27, WEX00007716-WEX00008033;**

22. **MEDICAL GUIDELINES -- JAILS (2018) 5.23, WEX00008034-WEX00008379;**

23. **MEDICAL GUIDELINES -- JAILS (2019) 2.6, WEX00008380-WEX00008727;**

24. **MEDICAL GUIDELINES -- JAILS (2020) 4.20, WEX00008728-WEX00009095;**

25. **MEDICAL GUIDELINES -- JAILS (2023) 1.5, WEX00009096-WEX00009564;**

26. **MEDICAL GUIDELINES -- JAILS (2024) 1.5, WEX00009565-WEX00009976;**

27. **MEDICAL GUIDELINES -- KANE (2019) 10.28, WEX00009977-WEX00010322;**

28. **MEDICAL GUIDELINES -- KANE (2020) 4.20, WEX00010323-WEX00010689;**

29. **MEDICAL GUIDELINES -- KANE (2021) 5.24, WEX00010690-WEX00011091;**

30. **MEDICAL GUIDELINES -- SWVRJA (2023) 1.5, WEX00011092-WEX00011549;**

5

31.    **MEDICAL GUIDELINES -- SWVRJA (2024) 1.5, WEX00011550-WEX00011948;**

32.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2017) 6.27, WEX00011949-WEX00012267;**

33.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2018) 5.23, WEX00012268-WEX00012611;**

34.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2019) 2.6, WEX00012612-WEX00012956;**

35.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2021) 5.24, WEX00012957-WEX00013365;**

36.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2023) 1.5, WEX00013366-WEX00013849;**

37.    **MEDICAL GUIDELINES -- WEST VIRGINIA (2024) 1.5, WEX00013850-WEX00014257;**

38.    **MEDICAL GUIDELINES -- WV JAILS (2024) 1.5, WEX00014258-WEX00014668;**

39.    **AM-01 Medically Supervised Withdrawal Management Guidelines (2022) 9.8, WEX00021264-WEX00021318;**

40.    **AM-02 MAT _MOUD (2022) 9.8, WEX00021319-WEX00021368; and,**

41.    **MOUD Quick Reference Criteria (2023) 11.6, WEX00023475-0023478.**

**Wexford's medical guidelines pertaining to MOUD are developed through collaboration of medical professionals on staff at Wexford who have education, training, and experience in treating substance abuse disorders, as well as consultation with NCCHC guidelines, SAMHSA, American Society of Addiction Medicine, Federal Bureau of Prisons, Bureau of Justice, and American Osteopathic Academy of Addiction Medicine. Additionally, the following is consulted in developing the Guidelines: https://www.samhsa.gov/medications-substance-use-disorders/statutes-regulations-guidelines; https://www.psychiatry.org/patients-families/opioid-use-disorder; https://www.aca.org/ACA/ACA_Member/Expanding_Access_to_Medications.aspx; various NCCHC position statements; Opioid Use Disorder: Diagnosis, Evaluation, and Treatment: Federal Bureau of Prisons**

6

**Clinical Guidance, August 2021; and, the ASAM National Practice Guidelines for the Treatment of Opioid Use Disorder: 2020 Focused Update.**

**The team involved in developing these guidelines includes, but is not limited to:**

1. **Michael A. Mitcheff, D.O., Corporate Medical Director for Addiction Medicine;**

2. **Kayleigh Matus, RN, BSN, Corporate Addiction Medicine Programs Manager;**

3. **Steven Ritz, D.O., Chief Medical Officer;**

4. **Neil Fisher, M.D., CCHP, Assistant Chief Medical Officer and Medical Director of Quality and Pharmacy;**

5. **Michelle Marrone, PharmD, CCHP, Vice President of Clinical Services; and,**

6. **Karen Laughlin, PharmD, Corporate Pharmacy Director.**

**The above-referenced guidelines are evidence that Wexford does not maintain a policy of denying MOUD to treat OUD. Wexford actively treats OUD with MOUD to the extent it is authorized to do so by the entity which contracts it to provide medical care.**

2. Identify all persons who participated in the decision to create and/or implement Wexford's policies and/or practices regarding provision of MOUD, denial of MOUD, and opioid withdrawal from January l, 2017 to the present, and for each such person, state (in addition to the items in 11.a above) that person's affiliation at the time of such participation (including whether that person was a Wexford employee or contractor or affiliated with a third party), summarize the participation of and information you believe to be known to that person, and state whether you have taken any written or recorded statements from that person regarding the Lawsuit.

ANSWER: **Michael A. Mitcheff, D.O. is the clinical expert for addiction medicine for Wexford. Wexford relies on him for the content of the addiction medicine guidelines. He has been the Corporate Medical Director for Addiction Medicine since July 1, 2021. Kayleigh Matus, RN, BSN,**

7

**manages the development of the program outlines for all Wexford contracts pertaining to addiction medicine programs. She has been the Corporate Addiction Medicine Programs Manager since July 16, 2023. Prior to this, Mari Green, Addiction Recovery Specialist, and Ron Smith, PsyD, Corporate Vice President of Behavioral Health Clinical Services were responsible for this role. Additionally, prior to Dr. Mitcheff taking the role of Corporate Medical Director for Addiction Medicine, Neil Fisher, M.D., was involved in crafting and writing the medically supervised withdrawal guidelines, as well as M-003A: Pregnancy and Opioid Use. All guidelines must be approved by the Medical Advisory Committee, which is selected based on the procedures in the Medical Guidelines section on Medical Advisory Committee: Mission Statement and Guidelines.**

**None of these individuals have given written or recorded statements regarding this lawsuit.**

4.    Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:

a.    Case name and number;

b.    Jurisdiction in which the case was filed;

c.    Whether the case is pending or closed;

d.    If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);

e.    If the case was tried to verdict, a summary of the verdict including any damages award; and

f.    If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.

**ANSWER:    Objection. Irrelevant. Not reasonably calculated to lead to the discovery of admissible evidence. Further, this request is overly broad and unduly burdensome as it requests lawsuits for claims that are not the basis of the allegations in this Complaint. This Complaint alleges constitutional and state law violations for alleged failure to provide inmates suffering from OUD with MOUD. This interrogatory requests a list of lawsuits related**

8

to treatment of incarcerated individuals with any substance use disorder, improper treatment during withdrawal from MOUD or other opioids and wrongful death or injury related to opioid overdose. These allegations are not contained in this Complaint. Specifically, none of the Plaintiffs allege that they suffered from an overdose while incarceration. Further, "improper treatment" is a vague term open to interpretation whereas Plaintiffs allege specifically that they were denied or refused MOUD.

Additionally, this interrogatory is overly broad and unduly burdensome. The manner in which this Defendant tracks its lawsuits may not encompass every single factual allegation in the Complaint. This Defendant estimates that approximately 2,000 lawsuits have been filed against it from 2013 to 2023. For this Defendant to be able to respond to this discovery request, it would require that it review the allegations in every Complaint in the approximately 2,000 lawsuits to determine if it falls into one of the categories requested by Plaintiffs. This burden severally outweighs the necessity of the information requested. Plaintiffs know what jurisdictions that Wexford provides medical care and therefore have the resources to search casefiles for lawsuits filed against Wexford and determine if they fall into one of the categories requested. Without waiving this objection, Wexford is able to determine that the following lawsuits were filed as it relates to denial of MOUD. However, without reviewing every single one of the approximately 2,000 Complaints filed between 2013 and 2023, Wexford is unable to determine if this list is conclusive and as previously stated, it is unduly burdensome to require it to review those Complaints:

1. *Joseph Taylor v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 2:23-cv-00475. This case is currently pending.

2. *William J. Hill v. Wexford Health Sources, Inc.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 2:21-cv-01619-CRE and Civil Action No. 21:cv-0163-CRE. These cases were dismissed.

3. *Robert Haller v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 1:23-cv-00675. This case was voluntarily dismissed.

4. *Seth Saults v. Lt. Sargent, et al.*, United States District Court for the Western District of Virginia, Civil Action No. 7:23-cv-00632-MFU-JCH. This case is currently pending.

9

5.    Identify any and all training provided to Wexford staff concerning opioid use disorder, opioid dependence, opioid withdrawal, or illicit opioid use, including:

a.    The title of the training, if any;

b.    A brief summary of topics covered by the training;

c.    The date(s) said training was provided;

d.    Where and to whom the training was offered;

e.    The individual(s) responsible for developing and/or leading said training; and

f.    The location of any records in the Defendants' possession, custody, or control that relate or refer to said training.

**ANSWER:**    **See WEX00033989 - WEX00034011, WEX00034012 - WEX00034034, WEX00034035 - WEX00034055, WEX00034056 - WEX00034107, WEX00034108 - WEX00034179, WEX00034180, WEX00034181 produced on March 19, 2024.**

**Substance Use Education Nonclinical FINAL 2017 and Substance Use Education Nonclinical were developed by Diana Heard, MA, CCHP. The remaining trainings set forth above were developed by Linda Campbell, MSN, RN, CCHP-RN. These materials were available to all employees at any time on the Learning Management System, CORR-Educator.**

**In addition to the above, Neil Fisher, M.D. has done numerous trainings in the jails and with other Wexford Health Sources, Inc. staff concerning medically supervised withdrawal guidelines, some formal and some informal and some as part of orientation. Additionally, Michael Mitcheff, D.O., has done numerous trainings concerning substance use disorder, specifically opioid use disorder and treatment of opioid use disorder, including medications for opioid use disorder.**

**The training set forth above is by no means an exhaustive list as training on these topics likely have occurred in all contracts to medical staff in new hire orientation.**

6.    Identify all persons who prepared, supplied information for, or in any way assisted

10

with the preparation of the answers to any of Plaintiffs' Interrogatories. For each person, identify the items set forth in 11.a above and designate the Interrogatory for which he, she, or they provided information.

> **ANSWER:    The discovery responses were prepared collaboratively between counsel for this Defendant, and Neil Fisher, Assistant Chief Medical Officer and Medical Director of Quality and Pharmacy, Michael A. Mitcheff, DO MBA CHCQM, Corporate Medical Director for Addiction Medicine, as well Kayleigh Matus, RN BSN, Corporate Addiction Program Manager. These individuals collaborated to answer all of these interrogatories and cannot pinpoint who provided the exact information for which interrogatory.**

7.      For each of Your affirmative defenses set forth in Your Answer to the Complaint, state by affirmative defense the basis for each such defense, including all facts supporting such defense. Your response should include (without limitation), the following:

a.      Any facts or law relied upon to support the fourth and ninth affirmative defenses that Defendant acted in accordance with "clearly established law" or "clearly established duty, standards, laws, regulations, or rules," including which duty, standards, laws, regulations, and rules Defendant is referring to in these defenses and what "[j]ustification" Defendant is referring to as having existed for its actions.

b.      Any facts or law relied upon to support the fifth affirmative defense regarding injuries caused by negligence, intentional acts, criminal acts, or other wrongful conduct of persons, firms, or corporations," including which persons, firms, and corporations Defendant is referring to and what negligence, intentional acts, criminal acts, and wrongful conduct those persons, firms, and corporations allegedly committed.

c.      Any facts relied upon to support the seventh and seventeenth affirmative defenses regarding Wexford's asserted immunities and how each form of immunity applies to Plaintiffs' claims.

d.      All facts you assert support Plaintiffs having "unclean hands" as asserted in Defendant's eleventh affirmative defense.

e.      Any facts or law relied upon to support the thirteenth affirmative defense, including identifying the "prescribed or known standard of action" to which Defendant refers and the origin thereof.

11

f.        The factual and legal basis for your assertion in Wexford's fourteenth affirmative defense that Plaintiffs have failed to mitigate their damages.

g.        Any facts or law relied upon to support the eighteenth affirmative defense of privilege, including identifying which specific privilege or privileges Defendant argues applies to which of Plaintiffs' claim or claims.

h.        The reasons for any decisions made by You referenced in Defendant's nineteenth affirmative defense.

i.        Identification of any party, individual, or entity that Defendant may have a legal right of indemnification or contribution from, as set forth in Defendant's twenty-third defense, and all facts supporting such potential indemnification or contribution.

j.        Any facts that You believe evidence spoliation as asserted m Defendant's twenty-fourth affirmative defense.

k.        Any facts or law relied upon to support the twenty-seventh affirmative defense of unconstitutional punitive damages under the Fifth, Eighth, and Fourteenth amendments.

l.        Any collateral source payments supporting Defendant's thirty-second affirmative defense and all facts supporting the assertion of this defense.

m.        Any superseding or intervening causes supporting Defendant's thirty-third affirmative defense and all facts supporting the assertion of this defense.

n.        A description of the legal and factual basis for your assertion that Plaintiffs lack standing, and all facts supporting such assertion made in Defendant's thirty seventh affirmative defense.

o.        Any facts or law relied upon to support Defendant's claimed thirty-eighth through fortieth affirmative defenses that the class is not properly brought as a class action, including that Plaintiffs are not proper class representatives and that the facts are not sufficient to certify a class.

**ANSWER:**    **This Defendant objects to this Interrogatory on the basis that is an improperly premature contention interrogatory. "Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period." *Capacchione v. Charlotte—Mecklenburg Board of Education*, 182 F.R.D. 486, 489 (W.D.N.C. 1998). Premature contention interrogatories are disallowed for several reasons. First, "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." *Cornell Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 66 (N.D.N.Y. 2003). Second, "a**

12

**lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless.** *Taggart v. Damon Motor Coach*, **2007 U.S. Dist. LEXIS 3462, 2007 WL 152101, \*8 (N. D. W. Va., Jan. 17, 2007) (citing** *In re Convergent Technologies Sec. Litig.*, **108 F.R.D. 328, 338 (N.D. Cal. 1985)).  Many affirmative defenses are asserted prophylactically so as not to waive the same in the event they may become relevant in the course of discovery, and many affirmative defenses are pled in the alternative.  As discovery has not yet closed, this Defendant is not yet necessarily aware of all facts upon which the Plaintiffs may base a theory of the case, and therefore cannot state with certainty all defenses it will raise, or what facts will support those defenses.  Where multiple alternate theories or defenses may ultimately be selected and relied on, a party "is not required to arbitrarily select one or to speculate which theory it might ultimately choose, simply because they have been asked to do so."** *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, **230 F.R.D. 538, 545 (N.D.Ill. 2005);** *Stabilus v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, **144 F.R.D. 258, 263 (E.D.Pa. 1992);** *Rodrigues v. Hrinda*, **56 F.R.D. 11, 14 (W.D.Pa. 1972).  This Defendant also objects to this Interrogatory on the basis that it requests the undersigned to disclose its intended case strategy, which is protected by the Attorney Work Product privilege. Last, some of these affirmative defenses may be subject to expert opinion and thus makes this interrogatory premature.**

8.     State all facts relied upon to or that support Defendant's denial of paragraphs 9, 17-19, 90, 121, 123, 133, 134, 137, 138, 159, 165, and 181 of the Complaint, including, without limitation, the factual basis for Defendant's denial of the statements in its own policy manual and the factual basis for Defendant's denial that it has a policy or practice to deny MOUD in the prisons and jails it serves. Your Response should set forth such facts by the paragraph number of Wexford's Answer to the Complaint.

**ANSWER:     Paragraph 9 was denied because Wexford does not serve as medical contractor for more than 100 jails and prisons across the country. It is less than 100. Additionally, the Illinois contract was not $1.4 billion as alleged, it was $1,363,436,041.**

**Paragraph 17 was denied because on January 17, 2023, it was confirmed the Plaintiff Smith had a Suboxone prescription through Cabin Creek Health Clinic. At that time, Subutex was ordered. However, it was not kept on site at that time and was not in stock, so it had to be shipped from offsite. It took three (3) days for the prescription to come in.**

13

Although Plaintiff Smith was not released from jail until January 24, 2023, the WVDCR system "checked" her out on January 20, 2023. Thus, the Wexford staff was not aware that she was still at the jail to give her the Subutex, and she never brought it to anyone's attention that she had not received it.

Paragraph 18 was denied because there is no evidence in Plaintiff Zmudzinski that he required or requested MOUD so therefore, Wexford could not have "cruelly denied" prescribed medications for OUD as alleged.

Paragraph 19 was denied because the contract was for $246,828,752.97.

See Response to Interrogatory No. 1 for basis as to why Paragraph 90 was denied.

Paragraph 121 was denied because Wexford does not pay for the MOUDs. These are paid for by the client that contracts Wexford outside of the contract.

See Response to Interrogatory No. 1 for basis as to why Paragraph 123 was denied.

See Response to Interrogatory No. 1 for basis as to why Paragraph 133 was denied.

See Response to Interrogatory No. 1 for basis as to why Paragraph 134 was denied.

See Response to Interrogatory No. 1 for basis as to why Paragraph 137 was denied.

See Response to Interrogatory No. 1 for basis as to why Paragraph 138 was denied.

Paragraph 159 was denied because other than Plaintiff Smith making one Inmate Health Services Request on January 18, 2023, stating "I need my meds", she made no complaints about her forced withdrawal and desire to access her prescribed MOUD. Further, Wexford did not ignore her request for MOUD, as her prescription was verified and the medication ordered.

Paragraph 165 was denied because there is no evidence that Wexford did not allow Plaintiff Zmudzinski to take his medications. He was not prescribed any MOUD upon intake. There is no evidence that he was suffering from withdrawal either. In fact, when he was taken in with

14

> **Wellpath on or about August 24, 2021, he reported his last dose was June 1st. Additionally, when he was evaluated on November 1, 2021, he reported he last used opioids two years prior.**
>
> **See Response to Interrogatory No. 1 for basis as to why Paragraph 181 was denied.**

9.      Given that Defendant has denied in paragraph 17 of its Answer to the Complaint that Wexford refused to provide Plaintiff Smith with her prescribed MOUD, describe what Wexford did (if anything) with respect to Ms. Smith's treatment for OUD following Defendant's admission that Ms. Smith brought her Suboxone with her to South Central Regional Jail, where Defendant admits Wexford served as the medical contractor, and the prescription for which Defendant admits it verified.

ANSWER:      **Plaintiff Smith came to SCRJ on January 16, 2023. Her medications were verified that same date, including Suboxone. The order was faxed to Boswell Pharmacy at that time and the task was put into CorEMR. There was a task in place to release the hold once the prescription arrived from the pharmacy. The medication had not arrived when Plaintiff Smith was released from the State's OIS system on January 20, 2023. Since Plaintiff Smith was no longer in the State's OIS system, the medical staff had no way of knowing that she was still incarcerated and although the medication arrived prior to her release from SCRJ on January 24, 2023, the task was not active on CorEMR, as her status was "released" per the State's OIS system.**

**Regarding the Suboxone that Plaintiff Smith brought with her to SCRJ, it was logged into the personal narcotics and returned to Plaintiff Smith upon release. It had been a facility standard for many years that the medical staff did not pass personal medications from the staff to patient. This never caused an issue for obtaining Buprenorphine from the pharmacy, as the pharmacy was aware that the medical staff could not pass personal medications.**

WEXFORD     HEALTH     SOURCES
INCORPORATED,
By Counsel,

  /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)

BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

                             **Civil Action No. 3:23-cv-00476**
                             **Honorable Robert C. Chambers**

WEXFORD HEALTH SOURCES INCORPORATED,

    Defendant.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties via electronic mail on this day, March 28, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennier N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV  25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC  20006
Attorney For: Plaintiffs

Case 3:23-cv-00476-TBD Document 86-58   Filed 03/29/24   Page 238 of 212 PageID#: 696

L. Dante diTrapano
David H. Carriger
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Attorney For: Plaintiffs

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

LAUREN SPURLOCK; HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

WEXFORD HEALTH SOURCES
INCORPORATED,

      Defendant.

Civil Action No. 3:23-cv-00476
Honorable Robert C. Chambers

## VERIFICATION

After being first duly sworn, I depose and say that the facts contained in the foregoing **DEFENDANT WEXFORD HEALTH SOURCES, INC.'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** are true, except insofar as they are therein stated to be upon information and belief, and that as they are therein stated to be upon information and belief, I believe them to be true.

_____
**JOSEPH EBBITT**

STATE OF PENNSYLVANIA,

COUNTY OF _Allegheny_, to-wit:

Taken, subscribed and sworn to before me, the undersigned Notary Public, this date,

March 28, 2024.

My commission expires: _2/25/2025_.

_____
Notary Public

{SEAL}
Commonwealth of Pennsylvania – Notary Seal
SHANNON BANKS, NOTARY PUBLIC
ALLEGHENY COUNTY
MY COMMISSION EXPIRES FEBRUARY 25, 2025
COMMISSION NUMBER 1384765

# EXHIBIT 1.c

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN    SPURLOCK;    HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    **Plaintiffs,**

**v.**                                                      **Civil Action No. 3:23-cv-00476**
                                           **Honorable Robert C. Chambers**

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    **Defendant.**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

    **NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K. Herrick,

Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C., and

pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the following

responses to **Plaintiffs' First Set of Interrogatories** without waiving any objection this Defendant

may have as to the relevancy or admissibility of any of the information contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

    A.    The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate.  Said

responses are made without prejudice to this Defendant's right to rely upon subsequently discovered

facts or evidence.

    B.    No incidental or implied admission of fact by this Defendant is made by the responses

below.  The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may

not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.  However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.  This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

H.     This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.     This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

<u>**INTERROGATORIES**</u>

3.     Identify every jail or prison with which Wexford has contracted to provide medical services from January 1, 2017 to the present, as well as the dates during which time Wexford provided such services, and for each such facility/date range, provide the following:

a.     Identify the Bates numbers for each contract(s) with Wexford associated with the facility/date range identified;

b.     By facility/date range identified, describe generally the medical intake process, including who conducts the intake (e.g., an RN), what questions are asked, and how that information is stored, and identify the Bates numbers for any exemplar intake forms used at each facility/date range identified;

c.     By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation, or other tool that Wexford used to screen for, identify, assess, or document an incarcerated individual's history of opioid dependence, OUD, illicit opioid use, or use of prescription or non-prescription opioids (including MOUD) (whether at intake or while under the care of Wexford), such as (without limitation) the Texas Christian University (TCU) Drug Screen or the Rapid Opioid Dependence Screen (RODS);

d.     By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation or other tool that Wexford used to screen for, identify, assess, document, or monitor opioid withdrawal (and identify the Bates number of exemplars), such as (without limitation) the Clinical Opiate Withdrawal Scale (COWS);

e. By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford maintained lists of, reported, recorded, or otherwise tracked (and identify by Bates number exemplars of each such list, report, record, or other tracking document) incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or those who were using prescription or non-prescription opioids (including MOUD) (whether at the time of intake or while under Wexford's care); who were offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who are withdrawing from opioids and any related symptoms or deaths relating to the same; or who have a history of taking MOUD;

f. By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford has maintained lists of, reported, recorded, or otherwise tracked the provision of medication for opioid use disorder to incarcerated individuals (and identify by Bates number exemplars of each such list, report, record, or other tracking document);

g. By facility/date range identified from January 1, 2017 to the present, describe any reports relating to opioids that Wexford has run or prepared for internal purposes or to provide to third parties, including but not limited to the states and/or municipalities with which it contracts, identifying incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or were using prescription or non-prescription opioids (including MOUD) at the time of such report; who have been offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who have been identified as withdrawing from opioids; or who have a history of taking MOUD;

h. By facility/date range identified from January 1, 2017 to the present, describe how each of the prisons or jails for which Wexford provides or provided medical care maintain their electronic medical record system, including (without limitation) how that system is operated and how information is uploaded to the system;

**ANSWER:** **State of West Virginia Division of Corrections and Rehabilitation – May 2008 to June 2022 prisons only as well as Northern Regional Jail. June 2022 to present, Wexford has operated the jails, prisons, and juvenile facilities.**

    **a.** **See Contract Documents - WEX00020883-WEX00020892; WEX00020988-WEX00021001; WEX00021161-WEX00021164; WEX00021128-WEX00021159; WEX00021166; WEX00021167-WEX00021168; WEX00021169; WEX00021170-WEX00021262; WEX00031822-0031884; WEX00032121-00032124; WEX00032125-00032132; WEX00032133-00032141; WEX00032689-00032697; WEX00032698-00032699; WEX00032700-00032704; WEX00032705-00032707;**

WEX00032708-00032712; WEX00032713-0032721; WEX00032722-00032726; WEX00032727-00032729; WEX00032730-00032735; WEX00032736-00032738; WEX00032739-00032741

b.  See Intake Forms - WEX00033615-WEX00033741 and WEX00033742-WEX00033897. This is done by a qualified healthcare professional.

c.  See RODS Form (no longer used) WEX00021160. See Opioid Use Screen Forms – WEX00189416-WEX00189420.

d.  See COWS Form WEX00021002-WEX00021003.

e.  Wexford tracks the following: Potential MOUD Candidates/Self Referrals/Sublocade Injections on site; OUD Withdrawal Management; Withdrawal Management total; Universal Screener (Receiving screening); individuals prescribed Suboxone, Subutex, SL Bup Stabilization for Sublocade, Sublocade Injection, Vivitrol Injection, Rivia, and, MTD. These reports are provided to the State of West Virginia on a monthly basis. See Bates Stamp WEX0021808-WEX0021819 produced on February 26, 2024.

f.  See Bates Stamp WEX0021808-WEX0021819 produced on February 26, 2024.

g.  See Bates Stamp WEX0021808-WEX0021819 produced on February 26, 2024.

h.  Wexford utilizes electronic medical records through CorEMR which is maintained by Wexford and hosted by Kalleo Technologies. Any nonelectronic records are scanned into the electronic medical records system.

St. Clair County Jail, Illinois – January 2004 to present.

a.  See Contract Documents - WEX00032283-00032295; WEX00032631-00032633; WEX00032634-00032636; WEX00032637-00032638; WEX00032639-00032641; WEX00032642-00032644; WEX00032645-00032647; WEX00032648-00032650.

b.  See Intake Forms - WEX00033567-WEX00033614. This is done by a qualified healthcare professional.

c.    Other than individuals self-reporting and a confirmatory drug screen, none.

d.    See COWS Form WEX00021002-WEX00021003

e.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

f.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.    Wexford utilized paper records until July 2023 and then implemented CorEMR. Wexford maintains CorEMR and it is hosted by Kalleo Technologies. Any nonelectronic records are scanned into the electronic medical records system.

**State of New Hampshire Department of Corrections – July 1, 2022 to present.**

a.    See Contract Documents - WEX00032058-00032097.

b.    The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.    ORAS, DAST, TCU

d.    Wexford will supplement the COWS form upon receipt.

e.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

f.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.      **The State maintains TechCare which is hosted by the New Hampshire State network. Any nonelectronic records are scanned into the electronic medical records system.**

**Pinal County Jail, Arizona – June 2017 to present.**

a.      **See Contract Documents - WEX00031904-0031908; WEX00032038-00032041; WEX00032098-00032120.**

b.      **The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.**

c.      **Other than individuals self-reporting and a confirmatory drug screen, none.**

d.      **See COWS Form WEX00021002-WEX00021003**

e.      **Wexford tracks the number of individuals who came into the facility reporting opioid use and provides this information to the Pinal County Sheriff's Department on a quarterly basis.**

f.      **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

g.      **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.      **Wexford utilizes electronic medical records through CorEMR which is maintained by the County and hosted by the County. Any nonelectronic records are scanned into the electronic medical records system.**

**Southwest Virginia Regional Jail Authority – July 2021 to present.**

a. See Contract Documents - WEX00032042-00032057; WEX00032673-00032674; WEX00032675-00032676; WEX00032677-00032680; WEX00032681-00032685; WEX00032686; WEX00032687; WEX00032688.

b. The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c. Other than individuals self-reporting and a confirmatory drug screen, none.

d. See COWS Form WEX00021002-WEX00021003

e. Wexford is not aware of any such information responsive to this request.

f. Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g. Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h. Wexford utilizes electronic medical records through CorEMR which is maintained by the SWVRJA and hosted by the SWVRJA. Any nonelectronic records are scanned into the electronic medical records system.

State of New Mexico Corrections Department – November 2019 to present.

a. See Contract Documents - WEX00032307-00032317; WEX0003218-00032320; WEX00032321-00032331; WEX00032332-00032408; WEX00032409-00032474.

b. The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical

        treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      Wexford will supplement the COWS form upon receipt.

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilizes paper records created by the State of New Mexico.

**State of Illinois Department of Corrections – May 2011 to present.**

a.      See Contract Documents – WEX00189046-00189376.

b.      The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      Wexford will supplement the COWS form upon receipt.

e.      Very recently, Wexford started tracking the number of individuals on MOUD and providing this report to the State on a weekly basis.

f.      Very recently, Wexford started tracking the number of individuals on MOUD and providing this report to the State on a weekly basis.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilizes Pearl EHR only at Logan, Decatur, JTC, and Elgin. The State maintains Pearl EHR and hosts it on its server. Any nonelectronic records are scanned into the electronic medical records system. The remaining facilities, the majority, utilize paper records created by the State of Illinois.

Mohave County Jail, Arizona – July 2022 to present.

a.      See Contract Documents - WEX00032142-00032152

b.      See Intake Forms - WEX00021004-WEX00021083. This is done by a qualified healthcare professional.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford maintains CorEMR and it is hosted by Kalleo Technologies. Any nonelectronic records are scanned into the electronic medical records system.

Yavapai County Jail, Arizona – July 2008 to present.

a.      See Contract Documents - WEX00032742-00032745;
        WEX00032746-00032789; WEX00032790-00032834;
        WEX00032835-00032868; WEX00032869-00032902;
        WEX00032903-00032935; WEX00032936-00032970;
        WEX00032971-00032975; WEX00032976-00032978;
        WEX00032979-00032982; WEX00032983-00032987;

WEX00032988-00032992; WEX00032993-00032996; WEX00032997-00033001; WEX00033002-00033006; WEX00033007-00033009; WEX00033010-00033013; WEX00033014-00033017; WEX00033018-00033039.

b.      The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilizes electronic medical records through CorEMR which is maintained by the County and hosted by the County. Any nonelectronic records are scanned into the electronic medical records system.

**Navajo County Jail, Arizona – March 2022 to present.**

a.      See Contract Documents - WEX00032475; WEX00032476-00032491

b.      See Intake Forms - WEX00033360-WEX00033494. This is done by a qualified healthcare professional.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilizes electronic medical records through CorEMR. Wexford maintains CorEMR and it is hosted by Kalleo Technologies. Any nonelectronic records are scanned into the electronic medical records system.

**Kane County Jail, Illinois – December 2010 to November 2022.**

a.      See Contract Documents - WEX0031885-WEX00031903; WEX00032296-00032299; WEX00032300-00032306

b.      Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford utilized electronic medical records through CorEMR. The County maintained CorEMR and it was hosted by the

County. Any nonelectronic records were scanned into the electronic medical records system.

State of Alabama Department of Corrections – April 2017 to September 2022.

a. See Contract Documents - WEX00031947-00031972; WEX00032175-00032219; WEX00032220-00032254; WEX0003225-00032260;

b. Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c. Other than individuals self-reporting and a confirmatory drug screen, none.

d. Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, to the extent someone needed to be monitored for opioid withdrawal, Wexford would have utilized the COWS system.

e. Wexford is not aware of any such information responsive to this request.

f. Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g. Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h. Wexford utilized paper records but implemented CorEMR for scheduling only in November 2019 and then utilized Sapphire eMAR since 2019. CorEMR was hosted on Wexford's network. Sapphire maintained and hosted the eMAR.

State of Illinois, Rushville Treatment Facility – July 2011 to present.

a.     See Contract Documents - WEX00032501-00032534; WEX00032535-00032564; WEX00032565-00032594; WEX00032595-00032630

b.     The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.     Other than individuals self-reporting and a confirmatory drug screen, none.

d.     Wexford will supplement the COWS form upon receipt.

e.     Wexford is not aware of any such information responsive to this request.

f.     Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.     Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.     Paper records created by the State of Illinois Department of Human Services.

       Westmoreland County Prison, Pennsylvania – May 2012 to August 2022.

a.     See Contract Documents - WEX00031908-0031946; WEX00032261-00032263; WEX00032264-00032265; WEX00032266-00032267;

b.     Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.          **Other than individuals self-reporting and a confirmatory drug screen, none.**

d.          **See COWS Form WEX00021002-WEX00021003**

e.          **Wexford is not aware of any such information responsive to this request.**

f.          **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

g.          **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.          **Wexford utilized electronic medical records through CorEMR. The County maintained CorEMR and it was hosted by the County. Any nonelectronic records were scanned into the electronic medical records system.**

**Butler County Prison, Pennsylvania – February 2012 to September 2021.**

a.          **See Contract Documents - WEX00032268-00032282**

b.          **Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.**

c.          **Other than individuals self-reporting and a confirmatory drug screen, none.**

d.          **See COWS Form WEX00021002-WEX00021003**

e.          **Wexford is not aware of any such information responsive to this request.**

f.          **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

g.    **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.    **Wexford utilized electronic medical records through CorEMR. The County maintained CorEMR and it was hosted by the County. Any nonelectronic records were scanned into the electronic medical records system.**

**Nueces County Jail, Texas – December 2023 to present**

a.    **See Contract Documents - WEX00032153-00032174**

b.    **See Intake Forms - WEX00033495-WEX00033566**

c.    **Other than individuals self-reporting and a confirmatory drug screen, none.**

d.    **See COWS Form WEX00021002-WEX00021003**

e.    **Wexford is not aware of any such information responsive to this request.**

f.    **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

g.    **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.    **Wexford utilizes electronic medical records through CorEMR. Wexford maintains CorEMR and it is hosted by Kalleo Technologies. Any nonelectronic records are scanned into the electronic medical records system.**

**St. Lucie County Jail, Florida – October 2018 to March 2021.**

a.    **See Contract Documents - WEX00031973-00032000; WEX00032651-00032654; WEX00032655-00032657; WEX00032658-00032660; WEX00032661-00032667; WEX00032668-00032672**

b.    **Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the**

intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilized CorrecTek EHR which was maintained by St. Lucie/CorrecTek. Wexford believes it was hosted by Kalleo Technologies.

**Luzerne County Prison – January 2020 to June 2020.**

a.      See Contract Documents - WEX00032001-00032037

b.      Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      See COWS Form WEX00021002-WEX00021003

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.      Wexford utilized electronic medical records through CorEMR. The County maintained CorEMR and it was hosted by the County. Any nonelectronic records were scanned into the electronic medical records system.

**State of Maryland Department of Public Safety & Correctional Services – July 2012 to December 2018.**

a.      See Contract Documents – WEX00189377-WEX00189415.

b.      Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

c.      Other than individuals self-reporting and a confirmatory drug screen, none.

d.      Given that Wexford no longer is in this contract, it does not have access to any documents responsive to this request. However, to the extent someone needed to be monitored for opioid withdrawal, Wexford would have utilized the COWS system.

e.      Wexford is not aware of any such information responsive to this request.

f.      Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.      **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

h.      **Wexford utilized NextGen EHR which was maintained by DPSCS.**

**WEXFORD        HEALTH        SOURCES INCORPORATED,**
**By Counsel,**

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

                                     **Civil Action No. 3:23-cv-00476**
                                       **Honorable Robert C. Chambers**

WEXFORD HEALTH SOURCES INCORPORATED,

    Defendant.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, April 8, 2024:

Anna C. Haac<br>
Gemma Seidita<br>
Tycko & Zavareei LLP<br>
2000 Pennsylvania Avenue NW, Suite 1010<br>
Washington, DC  20006<br>
Attorney For: Plaintiffs

W. Jesse Forbes<br>
Jennier N. Taylor<br>
Forbes Law Offices, PLLC<br>
1118 Kanawha Boulevard, East<br>
Charleston, WV  25301<br>
Attorney For: Plaintiffs

Julie S. Selesnick<br>
Berger Montague PC<br>
2001 Pennsylvania Avenue, NW, Suite 300,<br>
Washington, DC  20006<br>
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Attorney For: Plaintiffs


/s/ Jordan K. Herrick

Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# EXHIBIT 1.d

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN    SPURLOCK;    HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    **Plaintiffs,**

**v.**                                                        **Civil Action No. 3:23-cv-00476**
                                                             **Honorable Robert C. Chambers**

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    **Defendant.**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S FIRST SUPPLEMENTAL
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

    **NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K.

Herrick, Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C.,

and pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the

following supplemental responses to **Plaintiffs' First Set of Interrogatories** without waiving any

objection this Defendant may have as to the relevancy or admissibility of any of the information

contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

    A.    The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate. Said

responses are made without prejudice to this Defendant's right to rely upon subsequently

discovered facts or evidence.

    B.    No incidental or implied admission of fact by this Defendant is made by the

responses below.   The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.   However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.  This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may

not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

H.      This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.      This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## INTERROGATORIES

3.      Identify every jail or prison with which Wexford has contracted to provide medical services from January 1, 2017 to the present, as well as the dates during which time Wexford provided such services, and for each such facility/date range, provide the following:

a.      Identify the Bates numbers for each contract(s) with Wexford associated with the facility/date range identified;

b.      By facility/date range identified, describe generally the medical intake process, including who conducts the intake (e.g., an RN), what questions are asked, and how that information is stored, and identify the Bates numbers for any exemplar intake forms used at each facility/date range identified;

c.      By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation, or other tool that Wexford used to screen for, identify, assess, or document an incarcerated individual's history of opioid dependence, OUD, illicit opioid use, or use of prescription or non-prescription opioids (including MOUD) (whether at intake or while under the care of Wexford), such as (without limitation) the Texas Christian University (TCU) Drug Screen or the Rapid Opioid Dependence Screen (RODS);

d.      By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation or other tool that Wexford used to screen for, identify, assess, document,

or monitor opioid withdrawal (and identify the Bates number of exemplars), such as (without limitation) the Clinical Opiate Withdrawal Scale (COWS);

e.    By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford maintained lists of, reported, recorded, or otherwise tracked (and identify by Bates number exemplars of each such list, report, record, or other tracking document) incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or those who were using prescription or non-prescription opioids (including MOUD) (whether at the time of intake or while under Wexford's care); who were offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who are withdrawing from opioids and any related symptoms or deaths relating to the same; or who have a history of taking MOUD;

f.    By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford has maintained lists of, reported, recorded, or otherwise tracked the provision of medication for opioid use disorder to incarcerated individuals (and identify by Bates number exemplars of each such list, report, record, or other tracking document);

g.    By facility/date range identified from January 1, 2017 to the present, describe any reports relating to opioids that Wexford has run or prepared for internal purposes or to provide to third parties, including but not limited to the states and/or municipalities with which it contracts, identifying incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or were using prescription or non-prescription opioids (including MOUD) at the time of such report; who have been offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who have been identified as withdrawing from opioids; or who have a history of taking MOUD;

h.    By facility/date range identified from January 1, 2017 to the present, describe how each of the prisons or jails for which Wexford provides or provided medical care maintain their electronic medical record system, including (without limitation) how that system is operated and how information is uploaded to the system;

**ANSWER:    State of New Mexico Corrections Department – November 2019 to present.**

a.    **See Contract Documents - WEX00032307-00032317; WEX0003218-00032320; WEX00032321-00032331; WEX00032332-00032408; WEX00032409-00032474.**

b.    **The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be**

performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

**SUPPLEMENTAL RESPONSE:** See New Mexico Intake Forms, WEX00189421-WEX00189429. See Vivitrol Program Forms, WEX00189430-WEX00189467.

c.   Other than individuals self-reporting and a confirmatory drug screen, none.

**SUPPLEMENTAL RESPONSE:** See Opioid Use Disorder (Diagnostic) Screener, WEX00189433.

d.   Wexford will supplement the COWS form upon receipt.

**SUPPLEMENTAL RESPONSE:** See COWS Form, WEX00189468.

e.   Wexford is not aware of any such information responsive to this request.

f.   Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

g.   Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.   Wexford utilizes paper records created by the State of New Mexico.

WEXFORD HEALTH SOURCES INCORPORATED,
By Counsel,

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222

F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN SPURLOCK; HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

     Plaintiffs,

v.

WEXFORD HEALTH SOURCES
INCORPORATED,

     Defendant.

          **Civil Action No. 3:23-cv-00476**
          **Honorable Robert C. Chambers**

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s First Supplemental Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, April 10, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennier N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV 25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC 20006
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Attorney For: Plaintiffs

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# EXHIBIT 1.e

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN    SPURLOCK;    HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    **Plaintiffs,**

**v.**
                                   **Civil Action No. 3:23-cv-00476**
                                   **Honorable Robert C. Chambers**

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    **Defendant.**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S SECOND SUPPLEMENTAL
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

    **NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K. Herrick,

Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C., and

pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the following

supplemental responses to **Plaintiffs' First Set of Interrogatories** without waiving any objection

this Defendant may have as to the relevancy or admissibility of any of the information contained

herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

    A.    The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate. Said

responses are made without prejudice to this Defendant's right to rely upon subsequently discovered

facts or evidence.

    B.    No incidental or implied admission of fact by this Defendant is made by the responses

below.  The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.  However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.  This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may not be based solely on the knowledge of the executing party, but may include the knowledge of the

2

party's agents, representatives and attorneys, unless privileged.

H.    This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.    This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## INTERROGATORIES

3.    Identify every jail or prison with which Wexford has contracted to provide medical services from January 1, 2017 to the present, as well as the dates during which time Wexford provided such services, and for each such facility/date range, provide the following:

a.    Identify the Bates numbers for each contract(s) with Wexford associated with the facility/date range identified;

b.    By facility/date range identified, describe generally the medical intake process, including who conducts the intake (e.g., an RN), what questions are asked, and how that information is stored, and identify the Bates numbers for any exemplar intake forms used at each facility/date range identified;

c.    By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation, or other tool that Wexford used to screen for, identify, assess, or document an incarcerated individual's history of opioid dependence, OUD, illicit opioid use, or use of prescription or non-prescription opioids (including MOUD) (whether at intake or while under the care of Wexford), such as (without limitation) the Texas Christian University (TCU) Drug Screen or the Rapid Opioid Dependence Screen (RODS);

d.    By facility/date range identified from January 1, 2017 to the present, describe and identify by Bates number exemplars of any test, checklist, worksheet, examination, evaluation or other tool that Wexford used to screen for, identify, assess, document, or monitor opioid withdrawal (and identify the Bates number of exemplars), such as (without limitation) the Clinical Opiate Withdrawal Scale (COWS);

3

e.  By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford maintained lists of, reported, recorded, or otherwise tracked (and identify by Bates number exemplars of each such list, report, record, or other tracking document) incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or those who were using prescription or non-prescription opioids (including MOUD) (whether at the time of intake or while under Wexford's care); who were offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who are withdrawing from opioids and any related symptoms or deaths relating to the same; or who have a history of taking MOUD;

f.  By facility/date range identified from January 1, 2017 to the present, describe whether and how Wexford has maintained lists of, reported, recorded, or otherwise tracked the provision of medication for opioid use disorder to incarcerated individuals (and identify by Bates number exemplars of each such list, report, record, or other tracking document);

g.  By facility/date range identified from January 1, 2017 to the present, describe any reports relating to opioids that Wexford has run or prepared for internal purposes or to provide to third parties, including but not limited to the states and/or municipalities with which it contracts, identifying incarcerated individuals who have a history of opioid dependence, OUD, or illicit opioid use, or were using prescription or non-prescription opioids (including MOUD) at the time of such report; who have been offered opioid-related addiction services by Wexford or by the carceral facility with which Wexford contracts including counseling; who have been identified as withdrawing from opioids; or who have a history of taking MOUD;

h.  By facility/date range identified from January 1, 2017 to the present, describe how each of the prisons or jails for which Wexford provides or provided medical care maintain their electronic medical record system, including (without limitation) how that system is operated and how information is uploaded to the system;

**ANSWER:  State of Illinois Department of Corrections – May 2011 to present.**

**a.  See Contract Documents – WEX00189046-00189376.**

**b.  The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.**

4

**SUPPLEMENTAL RESPONSE:**   See Illinois Intake Forms, WEX00190492-WEX00190555, produced on April 18, 2024.

c.    Other than individuals self-reporting and a confirmatory drug screen, none.

d.    Wexford will supplement the COWS form upon receipt.

e.    Very recently, Wexford started tracking the number of individuals on MOUD and providing this report to the State on a weekly basis.

f.    Very recently, Wexford started tracking the number of individuals on MOUD and providing this report to the State on a weekly basis.

g.    Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.

h.    Wexford utilizes Pearl EHR only at Logan, Decatur, JTC, and Elgin. The State maintains Pearl EHR and hosts it on its server. Any nonelectronic records are scanned into the electronic medical records system. The remaining facilities, the majority, utilize paper records created by the State of Illinois.

**State of New Hampshire Department of Corrections – July 1, 2022 to present.**

a.    See Contract Documents - WEX00032058-00032097.

b.    The intake forms will be supplemented upon receipt. However, the intake process would generally follow the intake process in many of the intake forms produced already and would be performed by a qualified healthcare professional and would include questions concerning illicit drug use, current medical treatment, current medications, and substance use, including last time the substance was used.

**SUPPLEMENTAL RESPONSE:**   The Techcare system does not allow Wexford to download templates. There are no specific templates (other than a psychological evaluation) that would start someone on a MAT/MOUD program. However, here is the outline of the process:

5

- **New resident or parole violator intake (nurse sees new intake in reception and ask what medications they are on). A note is then placed in the medical record. Next, an alert is created similar to this alert:**



- **The prescriber then puts the initial prescription on entry to facility:**

| Buprenorphine HCl Sublingual 8 MG Tablet Sublingual | Place 8 mg under tongue once in the morning for 30 day(s). | 1/10/2024 8:00 AM | 2/8/2024 11:59 PM | Corignati, MaryJane B NP | Yelena Svetitsa | |
| Buprenorphine HCl Sublingual 8 MG Tablet Sublingual | Place 8 mg under tongue STAT for 1 day(s). | 1/11/2024 10:01 PM | 1/11/2024 11:59 PM | Corignati, MaryJane B NP | Jessica Taylor | |
| Buprenorphine HCl-Naloxone HCl Sublingual 2-0.5 MG Tablet Sublingual | Place 2-0.5 mg under tongue once a day for 180 day(s). ADD to current 16mg/4mg dose = 18mg/4.5mg TOTAL DAILY DOSE. | 1/31/2024 8:00 AM | 7/28/2024 11:59 PM | Anderson, Lori J MD | Lori Anderson | ADD to current 16mg/4mg dose = 18mg/4.5mg TOTAL |
| Buprenorphine HCl-Naloxone HCl Sublingual 2-0.5 MG Tablet Sublingual | Place 2-0.5 mg under tongue once in the morning for 5 day(s). (bridge rx) total dose 18mg. | 3/15/2024 8:00 AM | 3/19/2024 11:59 PM | Breaud, Scott NP | Scott Breaud | (bridge rx) total dose 18mg |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 16-4 mg under tongue once a day for 30 day(s). | 2/16/2024 | 3/16/2024 11:59 PM | Anderson, Lori J MD | Daniel Varnell | |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 16-4 mg under tongue once a day for 30 day(s). | 1/17/2024 8:00 AM | 2/15/2024 11:59 PM | Varnell, Daniel D MD | Kasey Castro | |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 16-4 mg under tongue STAT for 1 day(s). once daily- dose increase per orders from county/ dr. varnell. | 1/16/2024 8:52 AM | 1/16/2024 11:59 PM | Varnell, Daniel D MD | Kasey Castro | once daily- dose increase per orders from county/ dr. va |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 16-4 mg under tongue once in the morning for 5 day(s). (bridge rx) total dose 18mg. | 3/15/2024 8:00 AM | 3/19/2024 11:59 PM | Breaud, Scott NP | Scott Breaud | (bridge rx) total dose 18mg |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 8-2 mg under tongue once a day for 30 day(s). | 1/17/2024 8:00 AM | 2/15/2024 11:59 PM | Varnell, Daniel D MD | Kasey Castro | |
| Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG Tablet Sublingual | Place 8-2 mg under tongue STAT for 4 day(s). once a day. | 1/13/2024 5:58 PM | 1/16/2024 11:59 PM | Varnell, Daniel D MD | Kasey Castro | once a day |

- **The prescriber completing the initial psychological evaluation creates an alert/flag that the resident has a diagnosis:**

| No Lifting (CD201) | ☐ | on patient release | 8:57 PM | 8:56 PM | Laura Emmick | over 10 lbs for 5-6 weeks |
| Opioid dependence | ☑ | | 1/30/2024 4:45 PM | | Lori Anderson | OUD-svre in remiss on maint therapy |

Current Medications:

Buprenorphine HCl-Naloxone HCl Sublingual 8-2 MG (QTY: 2) (QD: 0800) 1/17/2024 - 2/15/2024
FLUoxetine HCl Oral 20 MG (QTY: 3) (QD: 0800) 1/16/2024 - 2/14/2024

- **At same initial psychological evaluation (must be completed within 30 days of entry) provider takes drug use history:**

**Comments / Other:**

first age: 12yo, cannabis; became regular at 16yo; last used in 2019
heroin: started at 27yo: became regular immediately; last used 2019, started Suboxone at that time
has used: meth x2, cocaine x2; K2 a few times;
denies PCP, ecstacy, LSD, shrooms, fentanyl,
EtOH: started at 16yo; became regular, but not excessive at 18yo; quit at 27yo when started heroin; no h/o withdrawals
Tobacco: started 16yo; continued until arrest: 1ppd; last used July 2022
quit all drugs in 2019, started Suboxone

- **Additionally, a licensed alcohol and drug counselor (LADC) screens the resident and comments on OUD – If dx exists – sends alert to schedule patient to get appointment for MAT/MOUD contract.**

    **c.     ORAS, DAST, TCU**

6

d.        **Wexford will supplement the COWS form upon receipt.**

e.        **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

**SUPPLEMENTAL RESPONSE:**   **Since 7/1/22 until present all doses of buprenorphine are as follows: (see report excerpt below):**



                        **Current count of active prescriptions:**

| Count of InmateID | Column Labels | | | | |
|---|---|---|---|---|---|
| Row Labels | Buprenorphine HCl Sublingual | Buprenorphine HCl-Naloxone HCl Sublingual | Naltrexone HCl Oral | (blank) | Grand Total |
| 2-0.5 MG | | 122 | | | 122 |
| 50 MG | | | 19 | | 19 |
| 8 MG | 15 | | | | 15 |
| 8-2 MG | | 598 | | | 598 |
| (blank) | | | | | |
| Grand Total | 15 | 720 | 19 | | 754 |

f.        **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

g.        **Wexford is not aware of any such information responsive to this request outside of what may be contained in an individual patient's medical records.**

**SUPPLEMENTAL RESPONSE:**   **See MAT/MOUD Program Documents, WEX00189469-**

7

**WEX00189481 and WEX00190556-WEX00190557, produced on April 18, 2024.**

h.    **The State maintains TechCare which is hosted by the New Hampshire State network. Any nonelectronic records are scanned into the electronic medical records system.**

**WEXFORD      HEALTH      SOURCES INCORPORATED,**
**By Counsel,**

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

8

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN SPURLOCK; HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.

                                        **Civil Action No. 3:23-cv-00476
Honorable Robert C. Chambers**

WEXFORD HEALTH SOURCES
INCORPORATED,

    Defendant.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Second Supplemental Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, April 18, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennier N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV  25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC  20006
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
Attorney For: Plaintiffs

/s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# EXHIBIT 1.f

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

LAUREN    SPURLOCK;    HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.                                                                      Civil Action No. 3:23-cv-00476
                                                                        Honorable Robert C. Chambers

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    Defendant.

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S THIRD SUPPLEMENTAL
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

**NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K.

Herrick, Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C.,

and pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the

following supplemental responses to **Plaintiffs' First Set of Interrogatories** without waiving any

objection this Defendant may have as to the relevancy or admissibility of any of the information

contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

    A.    The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate.  Said

responses are made without prejudice to this Defendant's right to rely upon subsequently

discovered facts or evidence.

    B.    No incidental or implied admission of fact by this Defendant is made by the

responses below.   The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.   However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.   This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may

not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

H.      This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.      This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## INTERROGATORIES

7.      For each of Your affirmative defenses set forth in Your Answer to the Complaint, state by affirmative defense the basis for each such defense, including all facts supporting such defense. Your response should include (without limitation), the following:

a.      Any facts or law relied upon to support the fourth and ninth affirmative defenses that Defendant acted in accordance with "clearly established law" or "clearly established duty, standards, laws, regulations, or rules," including which duty, standards, laws, regulations, and rules Defendant is referring to in these defenses and what "[j]ustification" Defendant is referring to as having existed for its actions.

b.      Any facts or law relied upon to support the fifth affirmative defense regarding injuries caused by negligence, intentional acts, criminal acts, or other wrongful conduct of persons, firms, or corporations," including which persons, firms, and corporations Defendant is referring to and what negligence, intentional acts, criminal acts, and wrongful conduct those persons, firms, and corporations allegedly committed.

c.      Any facts relied upon to support the seventh and seventeenth affirmative defenses regarding Wexford's asserted immunities and how each form of immunity applies to Plaintiffs' claims.

d.      All facts you assert support Plaintiffs having "unclean hands" as asserted in Defendant's eleventh affirmative defense.

e.  Any facts or law relied upon to support the thirteenth affirmative defense, including identifying the "prescribed or known standard of action" to which Defendant refers and the origin thereof.

f.  The factual and legal basis for your assertion in Wexford's fourteenth affirmative defense that Plaintiffs have failed to mitigate their damages.

g.  Any facts or law relied upon to support the eighteenth affirmative defense of privilege, including identifying which specific privilege or privileges Defendant argues applies to which of Plaintiffs' claim or claims.

h.  The reasons for any decisions made by You referenced in Defendant's nineteenth affirmative defense.

i.  Identification of any party, individual, or entity that Defendant may have a legal right of indemnification or contribution from, as set forth in Defendant's twenty-third defense, and all facts supporting such potential indemnification or contribution.

j.  Any facts that You believe evidence spoliation as asserted m Defendant's twenty-fourth affirmative defense.

k.  Any facts or law relied upon to support the twenty-seventh affirmative defense of unconstitutional punitive damages under the Fifth, Eighth, and Fourteenth amendments.

l.  Any collateral source payments supporting Defendant's thirty-second affirmative defense and all facts supporting the assertion of this defense.

m.  Any superseding or intervening causes supporting Defendant's thirty-third affirmative defense and all facts supporting the assertion of this defense.

n.  A description of the legal and factual basis for your assertion that Plaintiffs lack standing, and all facts supporting such assertion made in Defendant's thirty seventh affirmative defense.

o.  Any facts or law relied upon to support Defendant's claimed thirty-eighth through fortieth affirmative defenses that the class is not properly brought as a class action, including that Plaintiffs are not proper class representatives and that the facts are not sufficient to certify a class.

**ANSWER:   This Defendant objects to this Interrogatory on the basis that is an improperly premature contention interrogatory. "Due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period." *Capacchione v. Charlotte—Mecklenburg***

*Board of Education*, 182 F.R.D. 486, 489 (W.D.N.C. 1998). Premature contention interrogatories are disallowed for several reasons. First, "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." *Cornell Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 66 (N.D.N.Y. 2003). Second, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. *Taggart v. Damon Motor Coach*, 2007 U.S. Dist. LEXIS 3462, 2007 WL 152101, *8 (N. D. W. Va., Jan. 17, 2007) (citing *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985)).  Many affirmative defenses are asserted prophylactically so as not to waive the same in the event they may become relevant in the course of discovery, and many affirmative defenses are pled in the alternative.  As discovery has not yet closed, this Defendant is not yet necessarily aware of all facts upon which the Plaintiffs may base a theory of the case, and therefore cannot state with certainty all defenses it will raise, or what facts will support those defenses.  Where multiple alternate theories or defenses may ultimately be selected and relied on, a party "is not required to arbitrarily select one or to speculate which theory it might ultimately choose, simply because they have been asked to do so."  *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 545 (N.D.Ill. 2005); *Stabilus v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 263 (E.D.Pa. 1992); *Rodrigues v. Hrinda*, 56 F.R.D. 11, 14 (W.D.Pa. 1972).

**SUPPLEMENTAL RESPONSE:** This Defendant also objects to this Interrogatory on the basis that it requests the undersigned to disclose its intended case strategy, which is protected by the Attorney Work Product privilege. Additionally, Plaintiffs have yet to demonstrate support of their wide-ranging claims through any evidence to date, and that the claims may relate to various contracts, various locations, various standards of care, and various jurisdictions. Defendant cannot possibly, based upon the vague and limited nature of the claims and evidence to date, provide all facts, law, and evidence supporting said defenses. Plaintiffs have yet to proffer proper facts or opinions on their claims and assertions.  Last, some of these affirmative defenses may be subject to expert opinion and thus makes this interrogatory premature.

First Affirmative Defense – This Defendant admits that the Complaint as filed is sufficiently

pled to survive a Motion to Dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* and therefore, withdraws this affirmative defense.

**Second Affirmative Defense** – Said information is contained in the Answer to the Complaint.

**Third Affirmative Defense** – See Response to First Affirmative Defense above.

**Fourth Affirmative Defense** – this Defendant avers that it does not maintain a policy, custom, or practice of forcefully withdrawing individuals from opioids. In fact, this Defendant has produced its guidelines in which it recommends that opioid use disorder be treated with medications for opioid use disorder. This Defendant has produced statistics from the State of West Virginia proving it prescribes MOUD to non-pregnant females. This Defendant has revised its guidelines and its procedures for how it treats individuals with OUD to keep up with the standard of care pertaining to the treatment of incarcerated individuals with OUD. This Defendant has recommended to the entities with which it contracts to implement MOUD/MAT programs and to the extent this Defendant is permitted to do so, has, and continues to implement these programs. This is all evidenced by the guidelines and electronic communications produced that that will be produced in this case. Last, there is no clearly established law of which this Defendant is aware that entitles an incarcerated individual to MOUD. To the extent Plaintiff references the ADA, this Defendant cannot be held liable for violation of same.

**Fifth Affirmative Defense** – See Response to the Fourth Affirmative Defense and Notice of Non-Party Fault. Additionally, this Defendant has not had the chance to obtain all the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this

time to respond to this interrogatory pertaining to the cause of Plaintiffs' damages. Additionally, certain damages and injuries may have been caused by the wrongful conduct and decision making of Plaintiffs including the use of illegal drugs, failure to abide by treatment programs, or abusing legal drugs.

**Sixth Affirmative Defense** – See Response to the Fourth Affirmative Defense and Notice of Non-Party Fault.

**Seventh Affirmative Defense** – See Response to the Fourth Affirmative Defense and Notice of Non-Party Fault.

**Eighth Affirmative Defense** – This was pled as a reservation of rights. This Defendant has not had the chance to obtain all of the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs, which may demonstrate that plaintiffs' actions, decisions, and wrongful conduct prove fault on the plaintiffs, including the use of illegal drugs, diversion, the failure to abide by treatment programs, and the abuse of legal drugs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Eighth Affirmative Defense.

**Ninth Affirmative Defense** – See Response to Fourth Affirmative Defense and Notice of Non-Party Fault.

**Tenth Affirmative Defense** – With respect to contributory negligence, comparative negligence, assumption of the risk, sudden emergency, duress, waiver, estoppel, fraud, illegality, laches, license, payment, release, res judicata, acquiescence, and running of the statute of limitations, facts and evidence may exist that have yet to be proffered or put forth that may be relevant to these defenses. Plaintiffs have yet to demonstrate any fault or wrongful conduct on the part of defendant, and has only provided self-

supporting allegations without proof or evidence. Therefore, until Plaintiffs come forward with more specific facts, evidence, and allegations regarding the multitude of jurisdictions and locations that may be applicable, this Defendant, based on the evidence at this time, can only plead affirmative defenses generally. There may be facts and evidence which may demonstrate that Plaintiffs' actions, decisions, and wrongful conduct prove fault on the Plaintiffs, including the use of illegal drugs, diversion, the failure to abide by treatment programs, and the abuse of legal drugs. As to venue and jurisdictional arguments, there may be defenses and legal arguments that relate to whether this Court has jurisdiction over non-West Virginia claims, Plaintiffs with claims solely occurring in other states, and/or class action claims.

**Eleventh Affirmative Defense** – This was pled as a reservation of rights.

**Twelfth Affirmative Defense** – This Defendant has not had the chance to obtain all of the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Twelfth Affirmative Defense.

**Thirteenth Affirmative Defense** – See Response to Fourth Affirmative Defense and Notice of Non-Party Fault.

**Fourteenth Affirmative Defense** – See Response to Fifth, Eighth, and Tenth Affirmative Defenses herein. Additionally, this Defendant has not had the chance to obtain all of the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Fourteenth Affirmative Defense.

**Fifteenth Affirmative Defense – The three named Plaintiffs' claims appear to be timely and therefore withdraws this affirmative, but this Defendant reserves the right to assert this defense should discovery uncover it is a viable defense. This is not withdrawn for any other potential class members or other unnamed Plaintiffs.**

**Sixteenth Affirmative Defense – This was pled as a reservation of rights to assert this defense should discovery uncover its viability as a defense.**

**Seventeenth Affirmative Defense – See Response to Fourth Affirmative Defense and Notice of Non-Party Fault.**

**Eighteenth Affirmative Defense – See Response to Fourth Affirmative Defense and Notice of Non-Party Fault.**

**Nineteenth Affirmative Defense – See Notice of Non-Party Fault. See Response to Fourth Affirmative Defense.**

**Twentieth Affirmative Defense – See Response to Fourth and Tenth Affirmative Defense. This conduct does not give rise to a claim for violation of the putative class plaintiffs' Eighth or Fourteenth Amendment rights.**

**Twenty-First Affirmative Defense – This Defendant withdraws this Affirmative Defense at this time but reserve the right to reassert it should discovery uncover that it is a viable defense.**

**Twenty-Second Affirmative Defense – See Response to Fourth and Tenth Affirmative Defense. This conduct does not give rise to a claim for punitive damages.**

**Twenty-Third Affirmative Defense – See Notice of Non-Party Fault.**

**Twenty-Fourth Affirmative Defense – This Defendant has not had the chance to obtain all of**

the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Twenty-Fourth Affirmative Defense.

Twenty-Fifth Affirmative Defense – This Defendant has not had the chance to obtain all of the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Twenty-Fifth Affirmative Defense.  See also Tenth Affirmative Defense response.

Twenty-Sixth Affirmative Defense – As stated in the Affirmative Defense, this Affirmative Defense was pled so as to preserve and not waive these defenses as required by Rule 8 and 12 of the *Federal Rules of Civil Procedure*. At this time, this Defendant does not have any information that it believes would warrant these defenses but pled them so as to not waive them and should discovery prove they are not viable defenses, they will be waived accordingly.

Twenty-Seventh Affirmative Defense – See Response to Fourth Affirmative Defense. This conduct does not give rise to a claim for punitive damages.

Twenty-Eighth Affirmative Defense – See Response to Fourth Affirmative Defense. This conduct does not give rise to a claim for punitive damages.

Twenty-Nineth Affirmative Defense – See Response to Fourth Affirmative Defense. This conduct does not give rise to a claim for punitive damages.

**Thirtieth Affirmative Defense** – This was pled as a reservation of rights to assert this defense should discovery uncover its viability as a defense as the allegations pled are claims of medical negligence or breaches of the standard of medical care.

**Thirty-First Affirmative Defense** – No facts need pled. This defense is based on the plain language of the West Virginia MPLA limit on damages. See also response to Thirtieth Affirmative Defense herein.

**Thirty-Second Affirmative Defense** – No facts need pled. This defense is based on the plain language of the West Virginia MPLA statute regarding collateral sources. See also response to Thirtieth Affirmative Defense herein.

**Thirty-Third Affirmative Defense** – See Tenth Affirmative Defense herein. This Defendant has not had the chance to obtain all of the written discovery pertaining to each of the named Plaintiffs, nor has this Defendant had the chance to depose the named Plaintiffs. This Defense also may implicate expert opinions. Therefore, it is premature at this time to respond to this interrogatory pertaining to the Thirty-Third Affirmative Defense.

**Thirty-Fourth Affirmative Defense** – This was pled as a reservation of rights to assert this defense should discovery uncover its viability as a defense. See also Thirtieth Affirmative Defense herein.

**Thirty-Fifth Affirmative Defense** – This was pled as a reservation of rights to assert this defense should discovery uncover its viability as a defense. See also Thirtieth Affirmative Defense herein.

**Thirty-Sixth Affirmative Defense** – This was pled as a reservation of rights to assert this defense should discovery uncover its viability as a defense.

**Thirty-Seventh Affirmative Defense – This affirmative defense will be addressed in this Defendant's response to the Motion for Class Certification.**

**Thirty-Eighth Affirmative Defense – This affirmative defense will be addressed in this Defendant's response to the Motion for Class Certification.**

**Thirty-Nineth Affirmative Defense – This affirmative defense will be addressed in this Defendant's response to the Motion for Class Certification.**

**Fortieth Affirmative Defense – This affirmative defense will be addressed in this Defendant's response to the Motion for Class Certification.**

> **WEXFORD HEALTH SOURCES INCORPORATED,**
> **By Counsel,**

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN   SPURLOCK;   HEATHER
SMITH;  and  SHAWN  ZMUDZINSKI,
individually  and  on  behalf  of  all  others
similarly situated,

    Plaintiffs,

v.

                                           **Civil Action No. 3:23-cv-00476**
                                           **Honorable Robert C. Chambers**

WEXFORD     HEALTH     SOURCES
INCORPORATED,

    Defendant.

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Third Supplemental Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties through the Court's Electronic Case Filing (ECF) system on this day, April 29, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennier N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV  25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC  20006
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Attorney For: Plaintiffs

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# EXHIBIT 1.g

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

LAUREN    SPURLOCK;    HEATHER
SMITH;  and  SHAWN  ZMUDZINSKI,
individually  and  on  behalf  of  all  others
similarly situated,

    **Plaintiffs,**

**v.**

    **Civil Action No. 3:23-cv-00476**
    **Honorable Robert C. Chambers**

WEXFORD    HEALTH    SOURCES
INCORPORATED,

    **Defendant.**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S FOURTH SUPPLEMENTAL**
**ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

    **NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K.

Herrick, Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C.,

and pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the

following supplemental responses to **Plaintiffs' First Set of Interrogatories** without waiving any

objection this Defendant may have as to the relevancy or admissibility of any of the information

contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

    A.    The following responses are based upon information and documentation presently

available to this Defendant and which this Defendant believes to be complete and accurate.  Said

responses are made without prejudice to this Defendant's right to rely upon subsequently

discovered facts or evidence.

    B.    No incidental or implied admission of fact by this Defendant is made by the

responses below.   The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.     Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time.   However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.     This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.     This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.     This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation.  This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.     This Defendant states that the information supplied in the following responses may

not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

H.      This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.      This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## INTERROGATORIES

4.      Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:

a.      Case name and number;

b.      Jurisdiction in which the case was filed;

c.      Whether the case is pending or closed;

d.      If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);

e.      If the case was tried to verdict, a summary of the verdict including any damages award; and

f.      If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.

**ANSWER:    Objection. Irrelevant. Not reasonably calculated to lead to the discovery of admissible evidence. Further, this request is overly broad and unduly burdensome as it requests lawsuits for claims that are not**

the basis of the allegations in this Complaint. This Complaint alleges constitutional and state law violations for alleged failure to provide inmates suffering from OUD with MOUD. This interrogatory requests a list of lawsuits related to treatment of incarcerated individuals with any substance use disorder, improper treatment during withdrawal from MOUD or other opioids and wrongful death or injury related to opioid overdose. These allegations are not contained in this Complaint. Specifically, none of the Plaintiffs allege that they suffered from an overdose while incarceration. Further, "improper treatment" is a vague term open to interpretation whereas Plaintiffs allege specifically that they were denied or refused MOUD.

Additionally, this interrogatory is overly broad and unduly burdensome. The manner in which this Defendant tracks its lawsuits may not encompass every single factual allegation in the Complaint. This Defendant estimates that approximately 2,000 lawsuits have been filed against it from 2013 to 2023. For this Defendant to be able to respond to this discovery request, it would require that it review the allegations in every Complaint in the approximately 2,000 lawsuits to determine if it falls into one of the categories requested by Plaintiffs. This burden severally outweighs the necessity of the information requested. Plaintiffs know what jurisdictions that Wexford provides medical care and therefore have the resources to search casefiles for lawsuits filed against Wexford and determine if they fall into one of the categories requested. Without waiving this objection, Wexford is able to determine that the following lawsuits were filed as it relates to denial of MOUD. However, without reviewing every single one of the approximately 2,000 Complaints filed between 2013 and 2023, Wexford is unable to determine if this list is conclusive and as previously stated, it is unduly burdensome to require it to review those Complaints:

1. *Joseph Taylor v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 2:23-cv-00475. This case is currently pending.

2. *William J. Hill v. Wexford Health Sources, Inc.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 2:21-cv-01619-CRE and Civil Action No. 21:cv-0163-CRE. These cases were dismissed.

3. *Robert Haller v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 1:23-cv-00675. This case was voluntarily dismissed.

**4.**       *Seth Saults v. Lt. Sargent, et al.*, **United States District Court for the Western District of Virginia, Civil Action No. 7:23-cv-00632-MFU-JCH. This case is currently pending.**

**SUPPLEMENTAL RESPONSE:**

**5.**       *Justin Allen Shultz v. Wexford Health Sources, Inc., et al.*, **Circuit Court of Pleasants County, West Virginia, Civil Action No. CC-37-2024-P-9. This case is currently pending.**

**6.**       *Robert Logan Michael v. Wexford Health Sources, Inc., et al.*, **United States District Court for the Southern District of West Virginia, Civil Action No. 2:24-cv-00064. This case is currently pending.**

**7.**       *Benjamin Lee Wilson v. Shelby Searls, et al.*, **United States District Court for the Northern District of West Virginia, Civil Action No. 5:24-cv-00033. This case was dismissed.**

**WEXFORD       HEALTH       SOURCES INCORPORATED,**
**By Counsel,**

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

WEXFORD HEALTH SOURCES INCORPORATED,

    Defendant.

Civil Action No. 3:23-cv-00476
Honorable Robert C. Chambers

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Fourth Supplemental Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties via electronic mail on this day, May 6, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennifer N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV  25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC  20006
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Attorney For: Plaintiffs

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

# EXHIBIT 1.h

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

WEXFORD HEALTH SOURCES INCORPORATED,

    Defendant.

Civil Action No. 3:23-cv-00476
**Honorable Robert C. Chambers**

**DEFENDANT WEXFORD HEALTH SOURCES, INC.'S FIFTH SUPPLEMENTAL
ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

**NOW COME** the Defendant, Wexford Health Sources, Inc., by counsel, Jordan K. Herrick, Justin C. Taylor, Harrison M. Cyrus, and the law firm of BAILEY AND WYANT, P.L.L.C., and pursuant to Rules 26, 33, 34 and 36 of the *Federal Rules of Civil Procedure* provide the following supplemental responses to **Plaintiffs' First Set of Interrogatories** without waiving any objection this Defendant may have as to the relevancy or admissibility of any of the information contained herein:

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

A.    The following responses are based upon information and documentation presently available to this Defendant and which this Defendant believes to be complete and accurate. Said responses are made without prejudice to this Defendant's right to rely upon subsequently discovered facts or evidence.

B.    No incidental or implied admission of fact by this Defendant is made by the

responses below. The fact that this Defendant has responded to **Plaintiffs' First Set of Interrogatories** may not properly be taken as an admission that this Defendant accepts or admits the existence of any facts set forth or assumed by such response or that such response constitutes admissible evidence.

C.      Responses to **Plaintiffs' First Set of Interrogatories** may be supplemented upon this Defendant's further investigation and acquisition of information or documentation which this Defendant does not possess or have knowledge of at this time. However, any such further supplementation shall be made only in accordance with the *Federal Rules of Civil Procedure*.

D.      This Defendant objects to each and every Request insofar as it seeks information which is protected by the attorney/client privilege, or which falls within the scope of the attorney work-product doctrine. This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that the information and/or documentation sought has or could have been obtained from other sources that were more convenient, less burdensome or less expensive.

E.      This Defendant objects to any definitions and instructions set forth in **Plaintiffs' First Set of Interrogatories** to the extent that the definitions and instructions are inconsistent and confusing, and to the extent that they attempt to impose requirements which are more burdensome or in addition to those set forth in the *Federal Rules of Civil Procedure*.

F.      This Defendant objects to **Plaintiffs' First Set of Interrogatories** to the extent that they seek to discover confidential information or documentation. This Defendant will produce such information and/or documentation, if essential to the litigation, only upon the entry of an appropriate Protective Order and upon permission of any third parties with which this Defendant may have obligations concerning confidential information.

G.      This Defendant states that the information supplied in the following responses may

not be based solely on the knowledge of the executing party, but may include the knowledge of the party's agents, representatives and attorneys, unless privileged.

H.      This Defendant states that the word usage and sentence structure may be that of the attorney assisting in the preparation of the following responses and, thus, does not necessarily purport to be the precise language of the executing party.

I.      This Defendant is answering and responding to **Plaintiffs' First Set of Interrogatories** in conformity with the requirements set forth in the *Federal Rules of Civil Procedure* and not necessarily in compliance with the instructions and definitions set forth in **Plaintiffs' First Set of Interrogatories.**

## INTERROGATORIES

4.      Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:

    a.      Case name and number;

    b.      Jurisdiction in which the case was filed;

    c.      Whether the case is pending or closed;

    d.      If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);

    e.      If the case was tried to verdict, a summary of the verdict including any damages award; and

    f.      If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.

    **ANSWER:    Objection. Irrelevant. Not reasonably calculated to lead to the discovery of admissible evidence. Further, this request is overly broad and unduly burdensome as it requests lawsuits for claims that are not**

the basis of the allegations in this Complaint. This Complaint alleges constitutional and state law violations for alleged failure to provide inmates suffering from OUD with MOUD. This interrogatory requests a list of lawsuits related to treatment of incarcerated individuals with any substance use disorder, improper treatment during withdrawal from MOUD or other opioids and wrongful death or injury related to opioid overdose. These allegations are not contained in this Complaint. Specifically, none of the Plaintiffs allege that they suffered from an overdose while incarceration. Further, "improper treatment" is a vague term open to interpretation whereas Plaintiffs allege specifically that they were denied or refused MOUD.

Additionally, this interrogatory is overly broad and unduly burdensome. The manner in which this Defendant tracks its lawsuits may not encompass every single factual allegation in the Complaint. This Defendant estimates that approximately 2,000 lawsuits have been filed against it from 2013 to 2023. For this Defendant to be able to respond to this discovery request, it would require that it review the allegations in every Complaint in the approximately 2,000 lawsuits to determine if it falls into one of the categories requested by Plaintiffs. This burden severally outweighs the necessity of the information requested. Plaintiffs know what jurisdictions that Wexford provides medical care and therefore have the resources to search casefiles for lawsuits filed against Wexford and determine if they fall into one of the categories requested. Without waiving this objection, Wexford is able to determine that the following lawsuits were filed as it relates to denial of MOUD. However, without reviewing every single one of the approximately 2,000 Complaints filed between 2013 and 2023, Wexford is unable to determine if this list is conclusive and as previously stated, it is unduly burdensome to require it to review those Complaints:

1.      *Joseph Taylor v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 2:23-cv-00475. This case is currently pending.

2.      *William J. Hill v. Wexford Health Sources, Inc.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 2:21-cv-01619-CRE and Civil Action No. 21:cv-0163-CRE. These cases were dismissed.

3.      *Robert Haller v. Wexford Health Sources, Inc.*, United States District Court for the Southern District of West Virginia, Civil Action No. 1:23-cv-00675. This case was voluntarily dismissed.

4.     *Seth Saults v. Lt. Sargent, et al.*, United States District Court for the Western District of Virginia, Civil Action No. 7:23-cv-00632-MFU-JCH. This case is currently pending.

5.     *Justin Allen Shultz v. Wexford Health Sources, Inc., et al.*, Circuit Court of Pleasants County, West Virginia, Civil Action No. CC-37-2024-P-9. This case is currently pending.

6.     *Robert Logan Michael v. Wexford Health Sources, Inc., et al.*, United States District Court for the Southern District of West Virginia, Civil Action No. 2:24-cv-00064. This case is currently pending.

7.     *Benjamin Lee Wilson v. Shelby Searls, et al.*, United States District Court for the Northern District of West Virginia, Civil Action No. 5:24-cv-00033. This case was dismissed.

SUPPLEMENTAL RESPONSE:    8.    *Estate of Elizabeth L. Fantino v. Wexford Health Sources, Inc., et al.*, United States District Court for the Western District of Pennsylvania, Civil Action No. 2:21-cv-0910-WSH. This case is still pending.

WEXFORD    HEALTH    SOURCES INCORPORATED,
By Counsel,

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

LAUREN SPURLOCK; HEATHER
SMITH; and SHAWN ZMUDZINSKI,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.

                                          **Civil Action No. 3:23-cv-00476**
                                          **Honorable Robert C. Chambers**

WEXFORD HEALTH SOURCES
INCORPORATED,

    Defendant.

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of foregoing **Defendant Wexford Health Sources, Inc.'s Fifth Supplemental Answers to Plaintiff's First Set of Interrogatories** was served upon the following parties via electronic mail on this day, May 7, 2024:

Anna C. Haac
Gemma Seidita
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC  20006
Attorney For: Plaintiffs

W. Jesse Forbes
Jennier N. Taylor
Forbes Law Offices, PLLC
1118 Kanawha Boulevard, East
Charleston, WV  25301
Attorney For: Plaintiffs

Julie S. Selesnick
Berger Montague PC
2001 Pennsylvania Avenue, NW, Suite 300,
Washington, DC  20006
Attorney For: Plaintiffs

L. Dante diTrapano
Calwell Luce di Trapano PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
Attorney For: Plaintiffs

 /s/ Jordan K. Herrick
Jordan K. Herrick (WV Bar #11128)
Justin C. Taylor (WV Bar #8014)
Harrison M. Cyrus (WV Bar #12731)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222
F: 304.343.3133
jherrick@baileywyant.com
jtaylor@baileywyant.com
hcyrus@baileywyant.com