IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LAUREN SPURLOCK, HEATHER SMITH,
and SHAWN ZMUDZINSKI, individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.                                                                  Case No.:  3:23-cv-00476

WEXFORD HEALTH SOURCES,
INCORPORATED,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Currently pending are Plaintiffs' (1) Motion to Strike Confidentiality Designations of Documents, or, in the Alternative File Provisionally Under Seal and (2) Plaintiffs' Motion to Compel Interrogatory Responses and Production of Documents. (ECF Nos. 85, 86). For the following reasons, the Court **DENIES** the motion to strike, (ECF No. 85), and **ORDERS** the Clerk to file the exhibits, (ECF Nos. 85-1 through 85-5), under seal. The motion itself, (ECF No. 85), shall be unsealed. The Court **GRANTS** the motion to compel, (ECF No. 86), and **ORDERS** Defendant to provide the information specified herein on or before **December 27, 2024**.

I.    Facts

On July 7, 2023, Plaintiffs filed a putative class action complaint on behalf of themselves and similarly situated individuals to whom Defendant allegedly denied medication for opioid use disorder ("MOUD") during incarceration. (ECF No. 1).

1

According to Plaintiffs, Defendant is the medical contractor for more than 100 jails and prisons across the country. (*Id.*). Plaintiffs claim that MOUD is the standard of care for opioid use disorder and proven to reduce effects of withdrawal, relapse, and recidivism. (*Id.*). Yet, Defendant allegedly saves millions of dollars per year by not providing MOUD and is motivated by maximizing its profits over inmates' wellbeing. (*Id.*). In Counts I and II, Plaintiffs claim that Defendant violated their rights under the Eighth and Fourteenth Amendments to be free from deliberate indifference to their serious medical needs. (*Id.*). In Counts III and IV, Plaintiffs assert that Defendant's negligence caused them and the class members direct and identifiable harm. (*Id.*). Plaintiffs seek compensatory and punitive damages, as well as attorneys' fees in this action. (*Id.*).

## II.   Relevant law

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Nevertheless, as specified in the Rule, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

2

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after conferring or attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Importantly, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.* With those rules in mind, the Court addresses the specific discovery disputes at issue.

### III. Discussion

#### A. *Motion to Compel*

Plaintiffs seek an order compelling Defendant to provide discovery regarding four categories of information: (1) prior lawsuits and complaints against Defendant, (2) additional custodians of documents, (3) allegedly non-privileged information, and (4) Defendant's financial information.

##### 1. Prior Lawsuits

The first area of dispute concerns Plaintiffs' Interrogatory No. 4 and Request for Production of Documents Nos. 37 and 38. These requests seek information and documents related to prior lawsuits filed against Defendant concerning MOUD as follows:

> **Interrogatory No. 4**
>
> Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:
>
> a. Case name and number;

3

    b. Jurisdiction in which the case was filed;

    c. Whether the case is pending or closed;

    d. If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);

    e. If the case was tried to verdict, a summary of the verdict including any damages award; and

    f. If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.

**Request for Production No. 37**

Complaints. All documents reflecting, constituting, discussing, or otherwise relating to any disciplinary reports, complaints (legal or non-legal), investigations, lawsuits, or other reprimands against Wexford or any Wexford employee, including but not limited to medical providers, related to the treatment of incarcerated individuals with substance use disorder, including the provision, denial, or forced withdrawal of MOUD or other opioids, and wrongful death or injury related to opioids from January 1, 2017 until the present.

**Request for Production No. 38**

Legal Claims and Files. Any and all claims filed in court against Wexford relating to the failure to provide MOUD and the complete case file associated with the same, including any documents produced by either party, any deposition transcripts or other recorded statements taken, any discovery responses, and any court filings.

In response to the motion to compel, Defendant asserts that it properly objected to Interrogatory No. 4 on the basis that it is overly broad and unduly burdensome. (ECF No. 91 at 4-5). According to Defendant, there were over 2,000 complaints naming it as a defendant between 2013 and 2023. Defendant claims that it would be required to review each of those lawsuits in order to identify responsive information. (*Id.* at 5). Nonetheless, Defendant states that it identified to Plaintiffs the lawsuits known to its counsel that alleged denial of MOUD. (*Id.*). Defendant asserts that it produced approximately 8,260 of responsive documents. (*Id.*).

4

The Court agrees that this information is relevant and discoverable in this putative class action alleging harm due to the denial of MOUD. First, Defendant has not supported its objection that the requests are overly broad. They are limited to subject matter that is relevant to this lawsuit within discrete time periods. Plaintiffs cited cases in which this type of discovery has been compelled, yet Defendant offers nothing more than its unsupported objection to providing the information. Second, Defendant has not offered a scintilla of evidence to indicate that responding to the request would be unduly burdensome. Defendant claims that it would be required to review 2,000 complaints for responsive information, but it has not provided any specific information regarding the purported time and expense required to respond to the requests. Considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, the Court **ORDERS** Defendant to respond to Interrogatory No. 4 and Request for Production Nos. 37 and 38 on or before **December 27, 2024**.

### 2. Additional Custodians

Plaintiffs ask the Court to order Defendant to search for responsive documents from four additional custodians, including Defendant's President and CEO, Executive Vice President and Chief Administrative Officer, Senior Vice President of Finance & Chief Financial Officer, and Vice President of Strategic Contracting and Compliance. (ECF No. 86 at 6). Plaintiffs also want Defendant to search the personal Gmail account of its Corporate Medical Director because it was used for business purposes. (*Id*. at 7). Plaintiffs satisfy the threshold consideration that the information sought is relevant. (ECF Nos. 86,

92). However, Defendant argues that conducting the searches would be disproportionate to the needs of the case because it would yield largely irrelevant information, and any responsive information would likely be duplicative of what Defendant previously produced. (ECF No. 91 at 11). According to Defendant, extrapolating from its prior collection and review of emails, the search and production of documents from five additional email accounts would take 273 hours at a cost of more than $54,000. (*Id.* at 12). As an initial matter, Defendant has not supported these proposed figures with an affidavit or other evidence. The affidavit attached to Defendant's response reflects its discovery efforts thus far, not necessarily what would be required to conduct a search of four additional custodians and one personal email account. (ECF No. 91-1). Furthermore, Defendants argument that any responsive information would likely be duplicative of information already produced would appear to reduce the burden of collecting and providing the information to Plaintiffs. Plaintiffs indicated that Defendant developed ESI search methods for its document production that would make further searches far more efficient. Further, the Court finds that Defendant could exclude any information that is duplicative of information already produced. For instance, any documents that were sent to, from, or which copied custodians that were already searched and whose information was produced could be eliminated from production. For those reasons, the Court **ORDERS** Defendant to produce non-duplicative responsive documents from the four additional custodians and the personal e-mail address identified in Plaintiffs' motion on or before **December 27, 2024**. (ECF No. 86 at 6-7).

### 3. Privilege Log

Plaintiffs claim that Defendant has not satisfied its burden that certain documents are privileged, and the Court should thus compel disclosure. (ECF No. 86 at 8-9). In

6

response, Defendant states that the Plaintiff's argument is without merit, but the dispute nonetheless may be resolved by the parties. During the meet and confer process, Defendant supposedly agreed to review the specific documents at issue and produce any that it determines, upon further review, do not qualify as privileged. (ECF No. 91 at 6-7, 17-18). Defendant asserts that it is working with its vendors to extract those archived documents for review. (*Id.* at 6). Considering all of the materials submitted and the arguments of counsel, the Court **ORDERS** Defendant to produce any documents that it determines were inadvertently withheld and provide any documents that remain at issue to the Court for *in camera* review on or before **December 27, 2024**. The documents shall not be filed, but hand delivered or mailed directly to chambers.

### 4. Punitive Damages

The final area of dispute concerns Request for Production of Documents Nos. 63, 64, and 66 through 75, (ECF No. 86 at 9), as follows:

> 63. Documents sufficient to identify any investors in Wexford, the amount and date of each investment by such investors, and any terms or conditions relating to each investment during the Relevant Time Period.
>
> 64. All of Wexford's tax records, including all of Wexford's federal and state income tax returns and related filings, with all attachments, from January 1, 2019 through the present.
>
> 66. Documents sufficient to show Wexford's assets, liabilities, and net worth from January 1, 2019 through the present.
>
> 67. Documents sufficient to show Wexford's annual revenue and expenses from January 1, 2019 through the present.
>
> 68. Documents sufficient to show Wexford's cash flows from January 1, 2019 through the present.
>
> 69. All of Wexford's profit and loss statements from January 1, 2019 through the present.
>
> 70. All of Wexford's annual and quarterly balance sheets, and all appendices and attachments, from January 1, 2019 through the present.

7

71. All of Wexford's annual and quarterly income statement reports and all appendices and attachments, from January 1, 2019 through the present.

72. All of Wexford's annual and quarterly audited financial and/or accounting statements produced according to generally accepted accounting principles and all appendices and attachments, from January 1, 2019 through the present.

73. All of Wexford's annual and quarterly independent auditor reports and all appendices and attachments, from January 1, 2019 through the present.

74. All of Wexford's annual and quarterly statements of cash flows and all appendices and attachments, from January 1, 2019 through the present.

75. All documents sufficient to identify the formula and calculation use for bonuses for the CEO, CFO, and other executives of Wexford from January 1, 2019 through the present.

(ECF No. 86-3 at 11-12).

Defendant asserts in response to Plaintiffs' motion to compel that its financial information is not relevant to class certification or the merits of the underlying action, it is premature to engage in discovery aimed at punitive damages, and the discovery sought is not proportional to the needs of the case. (ECF No. 91 at 5-6).

However, as Plaintiffs cited, this Court recently considered a strikingly similar scenario of an individual plaintiff and ordered that the financial information should be disclosed. The Court explained:

> Although neither the Federal Rules nor appellate precedent addresses the issue, courts within this district have required plaintiffs to "make a prima facie claim for punitive damages before being entitled to discovery of a defendant's financial records." *Robinson v. Quicken Loans Inc.*, No. Civ. A. 3:12-cv-0981, 2013 WL 1704839, at 4 (S. D. W. Va. Apr. 19, 2013) (Chambers, C.J.). "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "[T]his threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Id*. "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987).

8

> The Plaintiff presented evidence that he was denied MOUD despite repeated requests, contrary to the standard of care, that Wexford documents reveal its understanding of appropriate treatment of OUD, and that Wexford has or had a practice of similarly denying MOUD to inmates to, instead, force them into withdrawal, leading to repeated complaints, grievances, and negative health outcomes. Judge Aboulhosn's finding that the evidence submitted by the Plaintiff sufficed to set forth a prima facie case for punitive damages is not clearly erroneous. Although some judges may choose to set alternative deadlines for discovery of financial information, Wexford did not point to any binding law or precedent requiring that such materials be discoverable only after summary judgment, such that Judge Aboulhosn's order could be found to be contrary to law. Accordingly, Wexford's appeal of Judge Aboulhosn's order should be denied.

*Taylor v. Wexford Health Sources, Inc.*, No. 2:23-CV-00475, 2024 WL 1495781, at *3 (S.D.W. Va. Apr. 5, 2024).

Plaintiffs have offered ample justification, certainly as least as much as the Plaintiff provided in *Taylor*, that establishes viable claims of deliberate indifference and potential punitive damages. *See* (ECF Nos. 86 at 9-20, 92 at 11-12). Given that the information is relevant to Plaintiffs' claims, Defendant has not met its burden of establishing that the requests are overly broad or that it would be unduly burdensome to respond to them. (ECF No. 91 at 5-6). Blanket objections without anything to support them are simply insufficient to resist discovery of relevant information. The Court **ORDERS** Defendant to produce this information on or before **December 27, 2024**.

### *B. Motion to Strike Confidentiality Designations*

In its document production, Defendant designated certain materials as "confidential" pursuant to the terms of the protective order entered in this case. Plaintiffs ask the Court to strike the confidential designations of four groups of documents, which Plaintiffs filed provisionally under seal to use as exhibits in support of their motion to compel. (ECF No. 85 at 1). Plaintiffs request to refile their motion to compel without

9

redaction and all exhibits unsealed, or, in the alternative, allow the documents to remain under seal if Defendant provides sufficient justification for maintaining the designation as required by the Federal and local rules. (*Id.*). The documents at issue include:

> WEX00093487 ("C-Suite Presentation: Understanding MAT/MOUD and the Correctional Opportunity")
>
> WEX0050329 (Presentation "Understanding MAT/MOUD and the Correctional Opportunity")
>
> WEX00000001 at WEX00000056 (Global Addition Medicine Guidelines, Rev. January 3, 2024)
>
> WEX00219301 (10/30/2022 Email from Mitcheff to Ritz)

(ECF No. 85 at 2).

According to Plaintiffs, the above documents are not confidential. (*Id.*). "Rather, they consist of policy guidelines (which are communicated to patients and disseminated to [Defendant]'s third-party state contracting partners, who produce them in response to FOIA requests), presentations that largely contain discussion of publicly available research and data, and one internal communication concerning the same." (*Id.*). Further, Plaintiffs argue that Defendant "cannot point to any competitive harm that would result in disclosure, as required to meet the 'good cause' standard for protection." (*Id.*).

Defendant argues, in response, that it has gone to great lengths to create and restrict public dissemination of these documents, and it would be harmful if they were made publicly available. (ECF No. 90). Defendant attached an affidavit from Joseph Ebbitt, Director of Risk Management, HIPAA Compliance, and Legal Affairs. (ECF No. 90-1). Mr. Ebbitt articulates that the documents include detailed protocols, procedures, and forms that provide unique and concrete methodologies that enable Defendant to deliver effective medical care to inmates in the unique and challenging environments presented by public correctional facilities. (*Id.* at 2). Mr. Ebbitt details the efforts that

10

Defendant expended to create the documents, and the competitive harm that might result from striking the confidential designations. (*Id.*).

The undersigned is cognizant of the well-established Fourth Circuit precedent recognizing a presumption in favor of public access to judicial records. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000). As stated in *Ashcraft,* before sealing a document, the Court must follow a three-step process: (1) provide public notice of the request to seal; (2) consider less drastic alternatives to sealing the document; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives. *Id.* at 302.

In this case, Plaintiffs argue that there is nothing secret about the protocols that Defendant has developed for treating its patients, and that the information is widely disseminated to third parties, who have produced them in response to FOIA requests. (ECF No. 94). However, as Defendant explained, it has restricted public access to the documents to the best of its ability. (ECF No. 90 at 7). Defendant marks the documents Proprietary/Confidential prior to disseminating them to third-party contracting partners. (*Id.* at 7 n.1). Overall, reviewing the documents at issue, the parties' arguments, and the relevant law, the Court finds that the exhibits shall remain sealed.

The protective order, response in opposition to the motion to strike confidentiality designations, and the reply to the foregoing response, are all unsealed on the docket and publicly available. The Court deems this sufficient notice to interested members of the public regarding the request to seal. The Court has considered less drastic alternatives to sealing the documents, but in view of the nature of the information set forth in the documents—which is information disclosed and used in the discovery process and generally protected from public release—alternatives to wholesale sealing are not feasible

at this time. These exhibits are offered for the purpose of resolving a discovery dispute, rather than for disposition of substantive claims in this action. Accordingly, the Court finds that sealing the four exhibits to Plaintiffs' motion to compel does not unduly prejudice the public's right to access court documents. The Court **DENIES** Plaintiffs' motion, (ECF No. 85), and **ORDERS** the Clerk to file the exhibits, (ECF Nos. 85-1 through 85-5), under seal. The motion itself, (ECF No. 85), shall be unsealed.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**: December 4, 2024



Joseph K. Reeder
United States Magistrate Judge