# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

LAUREN SPURLOCK;
HEATHER SMITH; and
SHAWN ZMUDZINSKI, individually and
on behalf of all other similarly situated,

        Plaintiffs,

v.                                                   CIVIL ACTION NO. 3:23-0476

WEXFORD HEALTH SOURCES, INCORPORATED,

        Defendant.

## MEMORANDUM OPINION & ORDER

Pending before the Court are Defendant's Objection to December 4, 2024 Order, ECF No. 100, and Defendant's Motion to Stay Enforcement of December 4, 2024 Order, ECF No. 101. The Court previously stayed enforcement of Magistrate Judge Reeder's December 4, 2024 Order pending resolution of Defendant's Objection and Motion to Stay. *See* Dec. 19, 2024 Order, ECF No. 102. The Court ordered the parties to meet and confer regarding the discovery disputes at issue in Defendant's Objection and inform the Court of the remaining disputes. *See* Jan. 15, 2025 Order, ECF No. 113. The Court held a hearing on February 5, 2025.

The Court **SUSTAINS IN PART** and **OVERRULES IN PART** Defendant's Objection and **DENIES AS MOOT** Defendant's Motion to Stay.

**BACKGROUND**

This is a putative class action alleging that Wexford Health Sources, Inc., a for-profit company that serves as the medical contractor for more than 100 jails and prisons, "by policy and practice routinely denies thousands of people critical lifesaving medications prescribed to treat Opioid Use Disorder ("OUD"), in violation of federal and state law, as well as the medical standard of care." Compl. ¶¶ 1-10. Defendant allegedly maximizes its profits at the expense of inmates' wellbeing, saving millions of dollars per year by not providing medication for opioid use disorder ("MOUD") in spite of the standard of care. *Id.* Plaintiffs seek punitive damages under the Eighth and Fourteenth Amendments, as well as other relief. Compl. at 43.

Defendant filed objections to Magistrate Judge Reeder's December 4, 2024 Order, which granted Plaintiffs' Motion to Compel. Defendants object to the order as to three categories of information: (a) prior lawsuits and complaints against Defendant, (b) additional custodians of documents, and (c) Defendant's financial information.

**STANDARD**

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders. Fed. R. Civ. P. 72(a). A district court may modify or set aside any portion of the decision if it is "clearly erroneous or is contrary to law." *Id.* Therefore, "findings of fact will be affirmed unless [the court's] review of the entire record leaves [the court] with the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). Review of questions of law "is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *Robinson v. Quicken Loans Inc.*, No. CIV.A. 3:12-0981, 2013 WL 1704839, at *3 (S.D.W. Va. Apr. 19, 2013) (quoting *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)).

## DISCUSSION

### A. Prior Lawsuits and Complaints

The first area of dispute concerns Plaintiffs' Interrogatory No. 4 and Requests for Production Nos. 37 and 38:

> **Interrogatory No. 4**
> Identify every lawsuit filed against You within the past ten years related to treatment of incarcerated individuals with substance use disorder, including denial of MOUD; improper treatment during withdrawal from MOUD or other opioids; and wrongful death or injury related to opioid overdose. For each lawsuit, please state the following:
> a. Case name and number;
> b. Jurisdiction in which the case was filed;
> c. Whether the case is pending or closed;
> d. If the case is closed, a brief description of how the case was resolved (e.g., on a motion for summary judgment, or via settlement);
> e. If the case was tried to verdict, a summary of the verdict including any damages award; and
> f. If the case was settled or resolved through mediation or arbitration, a summary of the resolution including any monetary payment.
>
> **Request for Production Nos. 37, 38**
> 37. Complaints. All documents reflecting, constituting, discussing, or otherwise relating to any disciplinary reports, complaints (legal or non-legal), investigations, lawsuits, or other reprimands against Wexford or any Wexford employee, including but not limited to medical providers, related to the treatment of incarcerated individuals with substance use disorder, including the provision, denial, or forced withdrawal of MOUD or other opioids, and wrongful death or injury related to opioids from January 1, 2017 until the present.
> 38. Legal Claims and Files. Any and all claims filed in court against Wexford relating to the failure to provide MOUD and the complete case file associated with the same, including any documents produced by either party, any deposition transcripts or other recorded statements taken, any discovery responses, and any court filings.

Dec. 4, 2024 Order at 3-4.

Defendant's principal argument is that Magistrate Judge Reeder did not adequately consider whether the requested discovery was proportional to the needs of the case under Rule 26(b)(1). This rule provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable

Fed. R. Civ. P. 26(b)(1). The Court agrees with Magistrate Judge Reeder that information concerning prior lawsuits and complaints is relevant and proportional to the needs of this case. This is a putative class action alleging that Defendant routinely denies MOUD to inmates who then suffer as a result. Other lawsuits and complaints involving denial of MOUD are relevant because they may lead to evidence of a general pattern of conduct as well as to evidence supporting a claim for punitive damages. *See Pajak v. Under Armour, Inc.*, No. 1:19-CV-160, 2020 WL 265205, at *6 (N.D.W. Va. Jan. 17, 2020). This request is proportional to the needs of the case because Plaintiffs allege that Defendant prioritizes its profits over the medical needs of 25% of the population it serves. Compl. ¶ 8.

By the time of the hearing, the parties agreed that Defendant would provide the information requested in Interrogatory 4, subparts a, b and c and Plaintiffs would forgo the information in subpart f. Defendant argued that the information in subparts d and e was equally available to the parties if Plaintiffs had the information in subparts a, b, and c. Plaintiffs agreed as to the federal cases, but noted that state and local jurisdictions do not always provide easily searchable case information to the public. Then, Defendant agreed to provide the information in subparts d and e for any lawsuits in jurisdictions other than federal court.

The parties argued over whether Defendant should have to provide a spreadsheet that Defendant allegedly maintains to track lawsuits and other controversies. While Plaintiffs mentioned this spreadsheet in their Motion to Compel, Magistrate Judge Reeder did not explicitly order Defendant to produce it. *See* Dec. 4, 2024 Order; Pl.'s Mot. to Compel at 2, 4-5. Defendant

further argued that it does not have the complete case files described in Request for Production No. 38. The Court ordered Defendant to provide documents responsive to Interrogatory 4 and complaints responsive to Request for Production No. 38 by February 26, 2025. At that point, Plaintiffs may decide whether to pursue further disclosure of depositions, expert reports, or other material from case files.

At the hearing, Defendant's counsel could not provide an explanation of how Defendant tracks deaths and other incidents. Therefore, the Court ordered Defendant provide by affidavit, including multiple affidavits if necessary, an explanation by management-level corporate employees or officers of how Defendant tracks and follows non-lawsuit complaints that may be responsive to Interrogatory No. 37, including complaints, hospitalizations, injuries, overdoses, suicides, and deaths relating to opioid use or forced withdrawal. The Court ordered Defendant to provide this affidavit, or affidavits, to the Court and Plaintiffs by February 14, 2025. The Court further ordered that, within seven days of Defendant's production of the affidavit or affidavits, Plaintiffs will respond with a refined request for production.

### B. Additional Custodians

Magistrate Judge Reeder ordered Defendant to search for responsive documents from four additional custodians, including Defendant's President and CEO, Executive Vice President and Chief Administrative Officer, Senior Vice President of Finance & Chief Financial Officer, and Vice President of Strategic Contracting and Compliance. Plaintiffs satisfy the relevancy requirement because they allege that these individuals attended a presentation on the need for MOUD programs, after which Defendant changed its policies on the provision of MOUD. Pl.'s Mot. to Compel at 6. Defendant argued that the request is not proportional to the needs of the case because, extrapolating from its prior review of emails, it would take hundreds of hours to collect

and review emails for production. But as Defendant's counsel acknowledged during the hearing, Defendant now has an e-discovery team and better processes for document review. The Court finds no error in Magistrate Judge Reeder's decision. The Court ordered Defendant to assemble and review emails from the four custodians, remove any emails that are duplicative of those previously produced, and disclose a timeline for production to Plaintiffs by February 26, 2025.

The Court sustains Defendant's objection as to the proposed search of Defendant's Corporate Medical Director's personal Gmail account on the grounds that it is not proportional to the needs of the case. Because proportionality is not a pure question of fact, the Court does not need to find clear error. As counsel for both parties acknowledged at the hearing, the Corporate Medical Director copied his work email address almost every time he used his personal Gmail for work communications. Furthermore, Plaintiffs' counsel indicated at the hearing that Plaintiffs will have the opportunity to explore his email practices further during his deposition. Therefore, the burden of this search outweighs its likely benefit. The Court sets aside Magistrate Judge Reeder's ruling on this issue.

### C. Financial Information

The final category in dispute is Plaintiffs' request for financial documents in Requests for Production Nos. 63, 64, and 66 through 75:

> 63. Documents sufficient to identify any investors in Wexford, the amount and date of each investment by such investors, and any terms or conditions relating to each investment during the Relevant Time Period.
> 64. All of Wexford's tax records, including all of Wexford's federal and state income tax returns and related filings, with all attachments, from January 1, 2019 through the present.
> 66. Documents sufficient to show Wexford's assets, liabilities, and net worth from January 1, 2019 through the present.
> 67. Documents sufficient to show Wexford's annual revenue and expenses from January 1, 2019 through the present.
> 68. Documents sufficient to show Wexford's cash flows from January 1, 2019 through the present.

> 69. All of Wexford's profit and loss statements from January 1, 2019 through the present.
> 70. All of Wexford's annual and quarterly balance sheets, and all appendices and attachments, from January 1, 2019 through the present.
> 71. All of Wexford's annual and quarterly income statement reports and all appendices and attachments, from January 1, 2019 through the present.
> 72. All of Wexford's annual and quarterly audited financial and/or accounting statements produced according to generally accepted accounting principles and all appendices and attachments, from January 1, 2019 through the present.
> 73. All of Wexford's annual and quarterly independent auditor reports and all appendices and attachments, from January 1, 2019 through the present.
> 74. All of Wexford's annual and quarterly statements of cash flows and all appendices and attachments, from January 1, 2019 through the present.
> 75. All documents sufficient to identify the formula and calculation use for bonuses for the CEO, CFO, and other executives of Wexford from January 1, 2019 through the present.

Dec. 4, 2024 Order at 7-8.[1] These requests are intended to obtain information regarding Defendant's finances to support Plaintiffs' claim for punitive damages.

Courts within this district have required plaintiffs to "make a prima facie claim for punitive damages before being entitled to discovery of a defendant's financial records." *Robinson v. Quicken Loans Inc.*, No. Civ. A. 3:12-cv-0981, 2013 WL 1704839, at *4 (S.D.W. Va. Apr. 19, 2013). Magistrate Judge Reeder found that Plaintiffs offered ample justification to establish viable claims of deliberate indifference and potential punitive damages. Dec. 4, 2024 Order at 9. In particular, he found that the justification in this case was similar to the justification in another case in this district involving similar allegations against Defendant:

> The Plaintiff presented evidence that he was denied MOUD despite repeated requests, contrary to the standard of care, that Wexford documents reveal its understanding of appropriate treatment of OUD, and that Wexford has or had a practice of similarly denying MOUD to inmates to, instead, force them into withdrawal, leading to repeated complaints, grievances, and negative health outcomes. Judge Aboulhosn's finding that the evidence submitted by the Plaintiff sufficed to set forth a prima facie case for punitive damages is not clearly erroneous. Although some judges may choose to set alternative deadlines for discovery of financial information, Wexford did not point to any binding law or precedent requiring that such materials be discoverable only after summary judgment, such

---

[1] Plaintiffs did not include Request for Production No. 65 in their Motion to Compel. *See* Pl.'s Mot. to Compel at 9.

that Judge Aboulhosn's order could be found to be contrary to law. Accordingly, Wexford's appeal of Judge Aboulhosn's order should be denied.

*Taylor v. Wexford Health Sources, Inc.*, No. 2:23-CV-00475, 2024 WL 1495781, at *3 (S.D.W. Va. Apr. 5, 2024). In that case, Magistrate Judge Aboulhosn rejected Wexford's argument that it should not be required to produce financial information relevant to a claim for punitive damages until after such a claim had survived summary judgment. *Id.* at *2.

Magistrate Judge Reeder found that Plaintiffs were entitled to financial information and rejected as unsupported Defendant's argument that the requests were overly broad and burdensome. Dec. 4, 2024 Order at 9. The Court agrees with Magistrate Judge Reeder that Plaintiffs have produced sufficient evidence to support discovery of financial information. However, the Court finds that Plaintiffs have not demonstrated that discovery of many different types of financial statements is proportional to the needs of the case. Additionally, requesting all annual and quarterly balance sheets, income statement reports, audited financial and/or accounting statements, independent auditor reports, and statements of cash flows may be "unreasonably cumulative or duplicative" under Rule 26(b)(2)(C)(i).

Plaintiffs sought these financial records in connection with their claim for punitive damages. *See* Pl.'s Mot. to Compel at 9-11. "[A]dequate deterrence may require consideration of a defendant's financial worth when determining the amount of a punitive award." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 258 (4th Cir. 2017) (citing *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004)). Nothing in the briefing for Plaintiffs' Motion to Compel or the briefing for Defendant's Objection explains why such extensive financial documentation is needed to determine Defendant's financial worth for the purpose of punitive damages.

Before the hearing on Defendant's objections, Defendant provided to Plaintiffs the two consolidated financial statements that Defendant produced in *Taylor*. At the hearing, the Court

directed Defendant to provide consolidated financial statements covering January 1, 2019 through the present as well as documents responsive to Request for Production No. 63 by February 26, 2025. The Court sustained Defendant's objection as to Requests for Production Nos. 64 and 66 through 75.

At the hearing, Plaintiffs presented a new basis for discovery of financial information. Plaintiffs claimed Defendant's consolidated financial statement showed it received $500 million per year in taxpayer dollars and transferred tens of millions of dollars per year in management fees to the Bantry Group, thereby reducing Defendant's profits. At the same time, Plaintiffs argued, Defendant's Corporate Medical Director testified that the Defendant is a "low profit" business and cannot afford to provide MOUD. Plaintiffs did not present this basis for discovery of financial information in their Motion to Compel, which they filed before they conducted 30(b)(6) depositions. The Court advised Plaintiffs that they may file another motion or memorandum before Magistrate Judge Reeder providing additional support, including the theory presented at the February 5, 2025 hearing, to compel discovery of detailed financial information beyond the consolidated financial statements and investor information.

## CONCLUSION

For the foregoing reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Defendant's Objection.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 10, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE