**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-2038**

LAUREN SPURLOCK; HEATHER SMITH; and SHAWN ZMUDZINSKI, individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

WEXFORD HEALTH SOURCES, INC.,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Robert C. Chambers, District Judge. (3:23-cv-00476)

Argued: December 9, 2025 Decided: May 4, 2026

Before BENJAMIN and BERNER, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part and remanded in part by published opinion. Judge Berner wrote the opinion, in which Judge Benjamin and Judge Gibney joined.

**ARGUED:** Michael James Bentley, BRADLEY ARANT BOULT CUMMINGS LLP, Jackson, Mississippi, for Appellant. William J. Forbes, FORBES LAW OFFICES, PLLC, Charleston, West Virginia, for Appellees. **ON BRIEF:** Jordan K. Herrick, Justin C. Taylor, Harrison M. Cyrus, BAILEY & WYANT, PLLC, Charleston, West Virginia; Erin Saltaformaggio, P. Garner Vance, BRADLEY ARANT BOULT CUMMINGS LLP, Jackson, Mississippi, for Appellant. Hassan A. Zavareei, Glenn E. Chappell, Gemma Seidita, TYCKO & ZAVAREEI LLP, Washington, D.C.; F. Paul Bland, Jr., Julie S.

Selesnick, Washington, D.C., Natalie Lesser, Philadelphia, PA, BERGER MONTAGUE PC; Jennifer N. Taylor, FORBES LAW OFFICES, PLLC, Charleston, West Virginia; L. Danté diTrapano, David Carriger, CALWELL LUCE DITRAPANO PLLC, Charleston, West Virginia, for Appellees.

BERNER, Circuit Judge:

Lauren Spurlock, Heather Smith, and Shawn Zmudzinski suffer from opioid use disorder and allege that they were denied access to medical screening and treatment for opioid dependence while incarcerated. They seek to represent two classes of similarly situated individuals in this class action lawsuit against Wexford Health Sources, Inc. Wexford, a medical services corporation, contracts with prisons and jails throughout the United States to provide comprehensive medical care services to incarcerated individuals.

Spurlock, Smith, and Zmudzinski allege that Wexford violated their rights under the Eighth and Fourteenth Amendments by failing to screen for and treat opioid dependence. They assert that Wexford maintains a policy exempting medical care for opioid dependence from the otherwise comprehensive medical care it provides to incarcerated individuals. As a result, individuals who suffer from opioid dependence are forced to undergo painful opioid withdrawal.

The district court certified two classes of plaintiffs. The first class seeks a court order requiring Wexford to provide screening and treatment to individuals with opioid use disorder who are incarcerated in institutions where Wexford provides comprehensive medical care. The second class seeks damages for Wexford's past failure to provide this screening and treatment. For the reasons set forth below, we remand for the district court to consider in the first instance whether Spurlock, Smith, and Zmudzinski have standing to represent the class seeking injunctive relief. We affirm the district court's order certifying the class seeking damages.

I.

The tragedy of opioid dependence has led to "an extraordinary public health crisis that started at least two decades ago and has accelerated over the past decade." *City of Huntington v. AmerisourceBergen Drug Corp.*, 96 F.4th 642, 647 (4th Cir. 2024) (internal citations omitted). Our nation's jails and prisons have been at the forefront of grappling with this crisis. *See Criminal Justice Drug Facts*, Nat'l Inst. on Drug Abuse (June 2020), https://nida.nih.gov/publications/drugfacts/criminal-justice [https://perma.cc/YN46-7ASM]. Studies suggest that sixty-five percent or more of incarcerated individuals suffer from moderate to severe substance use disorder, including opioid use disorder (OUD). OUD is a progressive brain disease characterized by uncontrollable cravings for and/or dependence upon opioids. This case raises constitutional challenges to the medical treatment provided by Wexford to individuals suffering from OUD in carceral settings. We will first detail the generally accepted medical protocols for treatment of OUD before reciting the facts of this case.

A. Medical treatment for opioid use disorder

In 2002, the federal Food and Drug Administration (FDA) first approved the current medically accepted treatment protocol for OUD, known as medications for opioid use disorder or MOUD.[1] Under this protocol, patients are prescribed small doses of opioids in a controlled manner, thereby allowing them to manage their dependence and relieve

[1] Earlier forms of medication-assisted treatment for OUD were first approved by the FDA in the 1960s.

withdrawal symptoms. Like insulin for a diabetic, these medications can be used daily throughout an individual's lifetime to treat OUD. MOUD has proved to be highly effective, drastically reducing the risk of relapse and death from opioid overdose.

The broadly accepted evidence-based medical standard of care for OUD calls for screening for and, where medically appropriate, prescribing MOUD. The World Health Organization, National Institute on Drug Abuse, Substance Abuse and Mental Health Services Administration, National Sheriffs' Association, Centers for Disease Control and Prevention, American Medical Association, and the American Academy of Pediatrics all recommend that medical providers follow this protocol. *See, e.g.*, Am. Soc'y of Addiction Med., *The ASAM National Practice Guideline for the Treatment of Opioid Use Disorder: 2020 Focused Update* 11 (2020), https://sitefinitystorage.blob.core.windows.net/sitefinity-production-blobs/docs/default-source/guidelines/npg-jam-supplement.pdf?sfvrsn=a00a52c2_2 [https://perma.cc/7EVU-RQ6Z].

Notably, the process of withdrawal from opioids, also known as detoxification, is not even considered to be a medical treatment for OUD. Symptoms of withdrawal can cause significant suffering and even lead to death. Withdrawal carries with it both short-term and long-term consequences. In the short-term, individuals may experience "uncontrolled pain, psychological distress, suicidal ideation, and suicide attempts." *Investigation of the Cumberland County Jail (Bridgeton, New Jersey)*, U.S. Dep't of Just., C.R. Div. (Jan. 14, 2021), https://www.justice.gov/usao-nj/press-release/file/1354736/dl [https://perma.cc/6BS4-4BYC]. In the long-term, individuals may face an increased risk of

relapse, overdose, and death. *Id.* For those already prescribed MOUD, sudden cessation of the medication can cause withdrawal symptoms similar to opioid withdrawal itself.

## B. Factual background

Wexford is a private medical corporation that contracts with nearly one hundred jails and prisons around the country to provide comprehensive medical care services to detained and incarcerated individuals.[2] Wexford's Corporate Addiction Program Manager estimates that at least thirty-five percent of the individuals incarcerated at Wexford-contracted institutions meet the criteria to receive MOUD.

Lauren Spurlock, Heather Smith, and Shawn Zmudzinski (collectively the Named Plaintiffs) are three such individuals. All three have struggled with OUD for years. Spurlock and Smith were detained in jails in West Virginia, and Zmudzinski was incarcerated in a New Mexico prison. Wexford contracted with all three of these carceral institutions to provide comprehensive medical care. The Named Plaintiffs allege that, as a cost-saving measure, Wexford maintains a policy of excluding screening for OUD and MOUD treatment from the comprehensive medical care services it contracts to provide at jails and prisons. The Named Plaintiffs further allege that Wexford excludes these services despite its awareness of the medical standards of care for OUD, the substantial needs of

[2] Wexford contracts to provide comprehensive medical care both for state-wide correctional systems and individual institutions. During the time period relevant to the complaint, Wexford provided services in the state prison systems in Alabama, New Hampshire, Illinois, New Mexico, and West Virginia.

the population it serves, and the risk that categorically depriving incarcerated individuals of MOUD treatment may violate the Eighth and Fourteenth Amendments.

The allegations in the operative complaint cover the time period beginning in July 2021 and continue to the present. In support of their allegation that Wexford maintains a policy exempting OUD screening and MOUD treatment from its otherwise comprehensive medical care services, the Named Plaintiffs point to both Wexford's medical guidelines and its contracting process.

Prior to 2022, Wexford's medical guidelines expressly precluded providing MOUD treatment to individuals suffering from OUD. Rather, such individuals were forced to undergo withdrawal. This protocol applied to everyone—even to individuals like Named Plaintiff Heather Smith who arrived at the institution with a valid MOUD prescription.

In 2022, Wexford revised its medical guidelines. The revised guidelines outlined the dangers of withdrawal and the benefits of MOUD. Wexford recognized that "a comprehensive MOUD program that includes all three FDA-approved medications" is the medical standard of care and encouraged MOUD treatment. Parties' Joint Appendix (J.A.) 1048, 1026. The guidelines, however, also provided a caveat that Wexford was "required to follow the [individual institution's] policies." *Id.* In 2024, after this lawsuit was filed, Wexford once again updated its medical guidelines. The updated guidelines again recognize the seriousness of withdrawal and recommend the provision of MOUD treatment "if acceptable to [the individual institution's] leadership." J.A. 1140; *see also* 1162.

Despite these changes, the Named Plaintiffs assert that Wexford maintains its policy of excluding OUD screening and treatment with MOUD from the otherwise comprehensive

medical care services it provides in many institutions. The Named Plaintiffs assert that Wexford—not the individual institutions—bears responsibility for this policy.

Prisons and jails contract with Wexford to provide comprehensive medical services to detained and incarcerated individuals. At many of the institutions with which it contracts, Wexford is the sole provider of medical care and often assumes liability for constitutional violations on behalf of those institutions. Under a comprehensive medical services contract, Wexford assumes responsibility for providing medical care for the incarcerated individuals' medical needs. Comprehensive medical care services are generally understood to include OUD treatment, as Wexford's Corporate Addiction Program Manager stated in her deposition. Yet Wexford excludes this screening and treatment from the otherwise comprehensive medical care services that it contracts to provide.[3] Unless an institution enters into an additional optional contract to provide these services, Wexford does not provide OUD screening and MOUD treatment for individuals suffering from opioid dependence, thereby forcing all such individuals to undergo withdrawal. In contrast, Wexford's Corporate Addiction Program Manager testified that Wexford always includes treatment for other serious health conditions including, for example, cancer, heart disease, or diabetes, in all of its contracts.

[3] Although Wexford advocates for and provides MOUD treatment in certain institutions, the Named Plaintiffs allege that Wexford's policy excludes screening for and treatment of OUD unless the contracting institution enters into an additional contract for MOUD services. Wexford concedes that, at the institutions included in the Damages Class, it contracted to provide comprehensive medical care services but excluded OUD screening and MOUD treatment. Wexford also concedes that failure to provide this care contravenes medical standards of care.

C. Procedural background

The Named Plaintiffs filed this class action lawsuit under 42 U.S.C. § 1983. They allege that Wexford, acting under color of state law, violated their constitutional rights and those of other similarly situated individuals through its policy of excluding screening for OUD and provision of MOUD treatment from the otherwise comprehensive medical care services that it provides at nineteen institutions (collectively the Listed Institutions).[4] According to the Named Plaintiffs, this policy forces individuals suffering from OUD to undergo withdrawal rather than receiving medically necessary treatment. The Named Plaintiffs claim that the failure to provide such screening and treatment constitutes deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments.[5] Fundamentally, as the district court recognized, the Named Plaintiffs "contest whether Wexford can agree to provide comprehensive medical services but carve

[4] The Listed Institutions include: Alabama Department of Corrections, Butler County Prison, Douglas County Jail, Erie County Prison, Illinois Department of Corrections, Mohave County Adult Detention Center, Navajo County Detention Center, State of New Mexico Corrections Department, Nueces County Jail Facilities, Orleans Parish Jail, Pinal County facilities, St. Clair County Jail, St. Lucie County Jail, Southwest Virginia Regional Jails, West Virginia Division of Corrections & Rehabilitation Prisons and Jails; Western Virginia Regional Jail at Roanoke; Westmoreland County Prison; and Yavapai County Jail Facilities.

[5] The Eighth Amendment applies to individuals incarcerated after their conviction. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). The Fourteenth Amendment applies to individuals detained pretrial. *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023). Both Amendments protect an individual's right to treatment for serious medical needs during incarceration and detention.

out treatment for certain chronic conditions—whether MOUD for OUD or insulin for diabetes." *Spurlock v. Wexford Health Sources, Inc.*, No. 3:23-0476, 2025 WL 2085053, at *3 (S.D. W. Va. July 24, 2025).

Shortly after filing their lawsuit, the Named Plaintiffs asked the district court to certify two classes of plaintiffs: 1) pursuant to Federal Rule of Civil Procedure 23(b)(2), a class seeking to require Wexford to provide screening and, where appropriate, treatment for individuals suffering from OUD (the Injunctive Relief Class); and 2) pursuant to Federal Rule of Civil Procedure 23(b)(3), a class seeking damages for their past injuries caused by Wexford's policy against providing this treatment at the Listed Institutions (the Damages Class). In support of their motion for class certification, the Named Plaintiffs submitted voluminous materials, including proposed class definitions; declarations of the Named Plaintiffs' attorneys; depositions of Wexford's Corporate Addiction Program Manager, Director of Addiction Medicine, and Director of Jail Operations; Wexford's medical guidelines; evidence regarding the medical standard of care for treating OUD; internal Wexford presentations on MOUD; and an expert report setting forth the Named Plaintiffs' theory of damages. In total, the Named Plaintiffs filed more than 2,000 pages in support of their motion for class certification.

Wexford opposed certification of both classes. Wexford asserted that the proposed classes failed to meet the requirements of Federal Rule of Civil Procedure 23(a), namely that common questions did not unite the classes, that the Named Plaintiffs' claims were not typical of the classes, and that the Named Plaintiffs therefore could not adequately represent the classes. Wexford claimed that it did not have a policy or practice of excluding

MOUD screening and treatment, pointing to its contracts with specific institutions to provide these services. Furthermore, with respect to the Injunctive Relief Class, Wexford asserted that it lacked any final policymaking authority over the provision of MOUD and therefore would be unable to comply with the requested injunction, if granted. Finally, Wexford asserted that the Damages Class failed to meet Rule 23(b)(3)'s predominance requirement because individual inquiries overwhelmed questions common to the class members.

In response to Wexford's motion, the district court expressed concern that the Named Plaintiffs' proposed class definitions were overly broad and ordered the Named Plaintiffs to narrow them. After reviewing the Named Plaintiffs' revised definitions, the district court narrowed the class definitions further. The district court ultimately certified two classes of plaintiffs, defined as follows:

> **Damages Class**: All individuals who were confined at a Listed Facility during the applicable Relevant Time Period, who
>
> (1) (a) had a diagnosis of Opioid Use Disorder (OUD) at the time of intake, and reported that diagnosis during intake, or were diagnosed during such incarceration[;] (b) had a prescription for FDA-approved Medication for Opioid Use Disorder (MOUD) at the time of intake[;] or (c) were monitored for opioid withdrawal during such incarceration[;] and
>
> (2) who were not continued on MOUD, if already prescribed MOUD, or screened for MOUD induction[;] and
>
> (3) who were thereafter released from the Listed Facility[.]
>
> **Injunctive Relief Class**: All persons who are currently, or will in the future, be confined at a carceral facility for which Wexford provides comprehensive medical and/or healthcare services, who have a diagnosis of Opioid Use Disorder (OUD) at the time of intake, and report that diagnosis during intake, or are diagnosed during such incarceration, test positive for opioids during such incarceration, or are monitored for opioid withdrawal during such incarceration.

*Spurlock*, 2025 WL 2085053, at *19.

In a well-reasoned opinion, the district court concluded that these classes satisfy the requirements of Rule 23(a). The district court found that the classes are numerous; they present common questions regarding Wexford's liability and the constitutional injury alleged by the class members; the Named Plaintiffs' interests are typical so as to advance the interests of other class members; and the unnamed class members will be adequately represented. *Id.* at *12–19. The district court also determined that the revised definitions permit class members to be readily ascertained on the basis of Wexford's own records, thereby eliminating the need for individualized fact-finding. *Id.* at *9–10. The district court further found that both classes met one of the categories of Rule 23(b), as required for class certification. While acknowledging that Wexford disputes the Named Plaintiffs' account of both its alleged policy regarding MOUD and whether it has ultimate policymaking authority, the district court concluded that, at the class certification stage, it would "not [be] appropriate . . . to decide whether Wexford's or [the Named] Plaintiffs' account of Wexford's policymaking authority is the accurate one." *Id.* at *17. The district court found the Named Plaintiffs' evidence on these two points sufficient for purposes of class certification.

Wexford timely appealed, and this court granted Wexford's interlocutory petition to appeal class certification under Federal Rule of Civil Procedure 23(f). *See* 28 U.S.C. § 1292(e).

II.

Class certification is governed by Federal Rule of Civil Procedure 23. To be certified, a proposed class must satisfy all of the requirements of Rule 23(a) and one category of Rule 23(b). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654–55 (4th Cir. 2019). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). District courts must "rigorously examine whether plaintiffs have met the prerequisites of Rule 23(a)[.]" *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015). As a threshold requirement, this Court also requires that members of a class be "readily identifiable[.]" *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Where a "court cannot identify class members without extensive and individualized fact-finding or mini-trials," then the class cannot be certified because class membership cannot be ascertained. *Krakauer*, 923 F.3d at 658 (quoting *EQT Prod. Co.*, 764 F.3d at 358) (internal quotation marks omitted).

Rule 23(a)'s requirements ensure that the Named Plaintiffs are appropriate representatives of unnamed class members such that those class members will be "fairly and adequately protect[ed]" in their absence. Fed. R. Civ. P. 23(a). The requirements are as follows: first, the numerosity requirement calls for the proposed class to be so numerous that joinder of all parties is impracticable; second, the commonality requirement mandates that there be questions of law and fact common to the class members' claims; third, the typicality requirement calls for the claims or defenses of the named plaintiffs to be typical of the class; and fourth, the adequacy requirement mandates that those seeking to represent

the class be able to do so adequately. *See Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). While each requirement must be met, the inquiries often overlap. *See Dukes*, 564 U.S. at 349 n.5.

To be certified, a proposed class must also satisfy one of three categories enumerated in Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). The district court certified the Injunctive Relief Class pursuant to Rule 23(b)(2), which permits class certification where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). The district court certified the Damages Class pursuant to Rule 23(b)(3), which permits class certification where common questions of law or fact predominate over questions affecting only individual members (the predominance requirement), and class certification is superior to other available methods of adjudication (the superiority requirement). Fed. R. Civ. P. 23(b)(3).

For the reasons explained below, we remand to the district court to consider whether the Named Plaintiffs have standing to represent the Injunctive Relief Class, and we affirm certification of the Damages Class.

A. Certification of the Injunctive Relief Class

Wexford argues, for the first time on appeal, that the Named Plaintiffs lack standing to represent the Injunctive Relief Class, and that therefore there is no federal court jurisdiction over their injunctive relief claim.

At class certification, standing is analyzed "based on the allegations of personal injury made by the named plaintiffs." *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*, 892 F.3d 614, 620 (4th Cir. 2018) (quoting *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017)). Class representatives "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Sharp Farms v. Speaks*, 917 F.3d 276, 297 (4th Cir. 2019) (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 594 (1997)). To have standing to seek injunctive relief, a plaintiff's asserted injury must be ongoing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 96 (1983). Even those "who have suffered a past harm . . . cannot seek injunctive relief against future [harm] unless a recurrence is likely." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023). A plaintiff who suffered past harm can demonstrate standing to pursue injunctive relief only if she faces a "real or immediate threat" of being "wronged again." *Lyons*, 461 U.S. at 111.

Wexford argues that, because the Named Plaintiffs are no longer detained or incarcerated, they lack standing and their claim for injunctive relief is not justiciable. The Named Plaintiffs maintain that, although they are no longer incarcerated, they have standing to represent the Injunctive Relief Class because they face a real and immediate threat of being incarcerated again and thus are likely to be subjected again in the future to Wexford's policy of excluding screening for OUD and treatment with MOUD. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (holding that pretrial detention is "by nature temporary" and therefore such claims falls within the category of "capable of repetition, yet evading review" (internal quotation marks omitted)); *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 325–26 (4th Cir. 2022) (explaining this inquiry). Indeed,

one of the Named Plaintiffs was already reincarcerated at a Wexford-contracted institution during the pendency of this appeal. Response Br. at 46–47.

Because standing "is a jurisdictional issue of constitutional dimensions, . . . it may be raised and addressed for the first time on appeal." *Davison v. Randall*, 912 F.3d 666, 677 (4th Cir. 2019) (quoting *Hodges v. Abraham*, 300 F.3d 432, 443 (4th Cir. 2002)). District courts may, however, be best suited to consider standing in the first instance, particularly where the standing inquiry is fact-specific and therefore necessitates fact finding. *See Pub. Int. Legal Found., Inc. v. Wooten*, 164 F.4th 362, 366 (4th Cir. 2026) (remanding to the district court to consider subject-matter jurisdiction where standing was first raised on appeal and necessitated factfinding). That is the case here. The fact-intensive arguments put forth by the parties demonstrate the wisdom of this approach. Because standing was raised for the first time on appeal, the district court had no opportunity to address these arguments or to find relevant facts, including the Named Plaintiffs' likelihood of again being subjected to Wexford's policy. We therefore remand to the district court to consider whether the Named Plaintiffs possess standing to represent the Injunctive Relief Class.

### B. Certification of the Damages Class

Wexford argues that the district court abused its discretion in finding that the Damages Class satisfies this Court's ascertainability requirement; the commonality, typicality, and adequacy requirements of Rule 23(a); and both Rule 23(b)(3)'s requirements.

*i. Standard of review*

"We have long recognized that district courts possess 'broad discretion in deciding whether to certify a class.'" *Mr. Dee's, Inc. v. Inmar, Inc.*, 127 F.4th 925, 929 (4th Cir. 2025) (quoting *Lienhart v. Dryvit, Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). Accordingly, class certification decisions are reviewed for abuse of discretion. *In re Marriot Int'l, Inc.*, 78 F.4th 677, 685 (4th Cir. 2023). Our review is guided by an understanding of "both the considerable advantages that our district court colleagues possess in managing complex litigation and the need to afford them some latitude in bringing that expertise to bear." *Krakauer*, 925 F.3d at 654.

A district court abuses its discretion where its factual findings are clearly erroneous such that the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Williams v. Martorello*, 59 F.4th 68, 86 (4th Cir. 2023) (citation omitted). A district court also abuses its discretion when it "materially misapplies the requirements of Rule 23." *Brown*, 785 F.3d at 902.

*ii. Ascertainability and the requirements of Federal Rule of Civil Procedure 23(a)*

The district court determined as a threshold matter that the Damages Class was ascertainable, as required under our court's precedent. It also found that the Damages Class met the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *Spurlock*, 2025 WL 2085053, at *12–17. We discern no abuse of discretion.

As to ascertainability, Wexford argues that mini-trials will be necessary to identify the members of the Damages Class. Under the district court's revised class definition, however, each individual must have had a documented OUD diagnosis, presented a

prescription for MOUD to Wexford employees, or have been placed on supervision for withdrawal by Wexford employees. The district court found that, applying this definition, members of the Damages Class could be readily identified through examination of Wexford's own patient records. This finding was not an abuse of discretion.

Next, the district court found that the Damages Class meets the numerosity requirement. Wexford's own estimates suggest that thirty-five percent of incarcerated individuals in any given facility satisfy the criteria for MOUD treatment. Wexford does not contest this numerosity finding.

Among Wexford's primary contentions on appeal is that the Damages Class fails to meet Rule 23(a)'s commonality requirement, which requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Common questions suffice for class certification where the "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The district court found that a number of common questions unite the members of the Damages Class. *Spurlock*, 2025 WL 2085053, at *14–15, *18. The common questions of fact include: whether screening for and treatment with MOUD is the medically accepted standard of care for individuals with OUD; whether Wexford was aware of a substantial risk to its patients caused by withdrawal; whether Wexford had policymaking authority to provide MOUD through its contracting process with the Listed Institutions; and whether Wexford maintained a policy of excluding screening for OUD and provision of MOUD in that process. *Id.* at *13–15. The district court also identified a common question of law, specifically, whether Wexford's alleged policy constituted deliberate indifference to a

serious medical need in violation of the Eighth and Fourteenth Amendments. *Id*. at *13–14. We conclude that the district court did not abuse its discretion in finding these common questions of fact and law to be sufficient for class certification under Rule 23(a).

Wexford next argues that the Named Plaintiffs' claims are not sufficiently typical to those of absent class members, thereby defeating typicality. Typicality, however, does not require that a class representative's claim "be perfectly identical or perfectly aligned" to the claims of other class members. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). The district court found that, while some class members' circumstances may differ, the differences do not "strike at the heart of a deliberate indifference claim" if Wexford in fact maintained the alleged policy. *Spurlock*, 2025 WL 2085053, at *16. The Named Plaintiffs are sufficiently typical of the class. The parties largely agree that deprivation of this treatment for those with opioid dependence leads to withdrawal symptoms. The district court did not abuse its discretion in concluding that the fact that symptoms may vary does not defeat typicality because all the class members experienced the same alleged constitutional injury. *See generally Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (affirming class certification where "although a presently existing risk may ultimately result in different future harm for different inmates . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm"); *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1034, 1038–39 (8th Cir. 2018) (upholding class certification where plaintiffs "assert[ed] that the failure of the [d]efendants to screen properly for a life-threatening

disease and provide appropriate treatment expose[d] all inmates suffering from [a chronic condition] to the *same* unconstitutional injury").

Finally, Wexford argues that the district court erred in finding that the Named Plaintiffs "fairly and adequately protect the interests of the class," as required by Federal Rule of Civil Procedure 23(a)(4). Adequacy serves to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. Inc.*, 521 U.S. at 625. Wexford reiterates its commonality and typicality arguments under this prong. For the reasons above, we reject these arguments. We find no abuse of discretion in the district court's determination that the Named Plaintiffs adequately represent the class members and that their interests do not conflict.

Having found that the district court did not abuse its discretion in finding the Rule 23(a) requirements satisfied, we now turn to its analysis of the additional requirements imposed by Rule 23(b).

*iii. The requirements of Federal Rule of Civil Procedure Rule 23(b)(3)*

Wexford argues that the district court abused its discretion in finding that the Damages Class meets Rule 23(b)(3)'s predominance and superiority requirements. We address each requirement in turn.

1. Rule 23(b)(3) predominance

Rehashing its arguments regarding commonality, Wexford asserts that individualized questions of injury and liability defeat the Named Plaintiffs' ability to satisfy Rule 23(b)(3)'s predominance requirement. Predominance is designed to "test[] whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem Prods.*, 521 U.S. at 623. The predominance inquiry "focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *EQT Prod. Co.*, 764 F.3d at 366. Rule 23(b)(3)'s predominance inquiry is similar to, but more stringent than, the commonality requirement of Rule 23(a). *Id.*

First, Wexford asserts that the district court abused its discretion in finding that the alleged class is sufficiently cohesive because each class member will be required to prove a deprivation of medical care and resulting harm. According to Wexford, liability will turn on the symptoms suffered by each individual class member. This argument misinterprets the alleged constitutional injury. The alleged injury is that of being denied medical care for a serious medical need and therefore being subjected to the harm of withdrawal in contravention of prevailing standards of medical care.

The Named Plaintiffs allege that Wexford maintained a policy excluding screening for OUD and provision of MOUD treatment at the Listed Institutions. They also assert that Wexford knew that its policy contravened prevailing medical standards of care and would force individuals to undergo withdrawal, thereby posing a serious risk to their health and wellbeing. Wexford's Director of Addiction and Corporate Addiction Program Manager testified in their depositions that screening for OUD and treatment involving MOUD is the medically accepted standard of care. At a number of institutions, Wexford concedes that it did not screen for OUD or provide MOUD treatment. Rather, it maintained a policy of placing any individuals suffering from opioid dependence on a medically managed withdrawal plan in contravention of the medically accepted standard of care. Despite these

concessions, Wexford argues that class certification is not appropriate because the injury each potential class member suffered from forced withdrawal may have differed. The record does not, however, support Wexford's conclusory assertion that these differences were so significant as to defeat predominance.

Second, Wexford argues that state and local laws as well as policies in some of the Listed Institutions altogether preclude it from providing MOUD, thereby requiring individualized determinations of liability with respect to each Listed Institution. Wexford only points to a single Listed Institution that allegedly prevented Wexford from providing this care, however. Wexford's Director of Jail Operations refuted this point, suggesting that this was not the "hard no" that Wexford alleges, but more akin to "apathy" on the part of the institution. Wexford failed to identify a single state or local law that would preclude it from providing medical treatment for OUD where appropriate. Either way, the question regarding whether Wexford possessed policymaking authority is common to the class claims. *See, e.g.*, *Ross v. Gossett*, 33 F.4th 433, 438–39 (7th Cir. 2022) (finding that common questions predominated with respect to an alleged uniform practice).

Third, Wexford argues that it lacks policymaking authority over whether to provide MOUD within the Listed Institutions. The question of whether Wexford can be found liable ultimately turns on whether to credit the Named Plaintiffs' or Wexford's account. The Named Plaintiffs allege that Wexford maintains a policy of excluding screening for OUD and treatment with MOUD at the Listed Institutions. Wexford argues that it can only encourage, not require, the Listed Institutions to provide MOUD. The district court concluded, however, that there was sufficient evidence in the record to support the Named

Plaintiffs' account that Wexford had policymaking authority through its contracting process over the treatments that it provided. On the basis of the record evidence, the district court did not abuse its discretion in finding that "Wexford takes an active role in determining what programming is available under its contracts." *Spurlock*, 2025 WL 2085053, at *12. When Wexford contracts with individual institutions, it agrees to provide "comprehensive" medical care to people who are incarcerated at the contracting institutions. J.A. 567–68, 2607. Wexford itself, however, does not include MOUD as part of its otherwise comprehensive medical care. Instead, it offers MOUD only as a service to be contracted for at an additional cost. Importantly, Wexford does not deny that it could include such care within its comprehensive services package, even if an institution ultimately declined to accept it. The district court explained that the question of whose account to credit—the Named Plaintiffs' or Wexford's—is a question more appropriately resolved at the merits stage, rather than at class certification. We agree.

Wexford further challenges the district court's finding that the Named Plaintiffs' theory of damages is sufficiently linked to their theory of liability, thereby undermining predominance. Damages determinations implicate predominance because "the efficiencies of the class action mechanism would be negated if [q]uestions of individual damages calculations . . . overwhelm questions common to the class." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 237 (4th Cir. 2021) (internal quotation marks and citation omitted). Furthermore, the Named Plaintiffs must identify a theory of class-wide damages tied to their theory of liability to support class certification. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Before the district court, the Named Plaintiffs urged two theories of damages. First, they provided an expert report modeling economic damages based on the number of days a class member was denied adequate medical treatment. Second, they asserted noneconomic damages based on pain and suffering. On appeal, the Named Plaintiffs seemingly disclaimed their noneconomic damages model. Our inquiry focuses, therefore, on the district court's findings with respect to the economic model. The district court considered the methodology for determining economic damages proposed by the Named Plaintiffs' expert and found that damages could be resolved on a class-wide basis. The Named Plaintiffs' theory of liability is that they were unconstitutionally denied adequate medical care. The expert's damages model was based on the number of days each class member was denied constitutionally adequate medical care. We conclude that, at this stage in the litigation, the district court did not abuse its discretion in finding that this damages model was sufficiently linked to the Named Plaintiffs' theory of liability.

2. Rule 23(b)(3) superiority

Wexford raises no new contentions in challenging the district court's finding that the superiority requirement was met. Rule 23(b)(3) requires class representatives to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, courts must consider the "class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or

undesirability of concentrating the litigation of the claims in any particular forum; and the likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

The district court considered each of these factors before concluding that the requirement of superiority was met. *Spurlock*, 2025 WL 2085053, at *18. The district court relied on another case, *Taylor v. Wexford Health Sources, Inc.*, to demonstrate the superior advantages of class certification. *Id.* (citing 737 F. Supp. 3d 357 (S.D.W. Va. 2024)). In *Taylor*, a single plaintiff sued Wexford after being denied his prescription for MOUD while he was detained at West Virginia's Central Regional Jail. 737 F. Supp. at 365–66. Taylor suffered withdrawal symptoms similar to those alleged by the Named Plaintiffs here. *Id.* As the district court noted, *Taylor* involved "many similar issues, similar discovery, and testimony by at least one of the same individuals deposed for this case," suggesting considerable efficiencies could be achieved through class certification. *Spurlock*, 2025 WL 2085053, at *18. Again, we find no abuse of discretion in the district court's determination that "consolidation is likely to have benefits such as conserving judicial resources and reducing litigation costs." *Id.* A denial of class certification could potentially result in hundreds of lawsuits, all considering whether the same policy maintained at the Listed Institutions caused the same constitutional injury.

3. Possible uninjured class members

Wexford argues on appeal, as it did before the district court, that the Damages Class definition is overbroad because the class may contain uninjured class members. Wexford contends that, for certification to be appropriate, each member of the Damages Class must

be found to possess standing. Absent such a finding, Wexford argues both that the case is nonjusticiable under Article III and that the Rule 23 requirements cannot be met. Not so.

Although the potential that the class includes uninjured individuals implicates both Article III and Rule 23(b)(3)'s requirements, these inquiries are separate. *Krakauer*, 925 F.3d at 652; *see also* William B. Rubenstein, 1 Newberg and Rubenstein on Class Actions §2:1 (6th ed. 2025) ("[T]he standing inquiry should simply focus on the class representative's individual standing while representational inquiries should be made through the lens of Rule 23, not standing."). We address each below.

We begin with Article III standing. Because federal courts are courts of limited jurisdiction, there are certain "irreducible constitutional minimum[s]" that must be met for a federal court to hear a case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This concept is broadly known as justiciability. *Id.* Standing is one such constitutional prerequisite to our jurisdiction. *Id.* The "strictures of Article III standing apply with no less force in the context of class actions." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024).

We disagree with Wexford's contention that the district court must find that every potential class member possesses Article III standing before certifying a class.[6] The Named Plaintiffs, as representatives of the class, anchor this court's jurisdiction at the class certification stage. *See Baehr v. Creig Northrop Team*, *P.C.*, 953 F.3d 244, 252–53 (4th Cir. 2020). Where a class representative has standing, "'the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing' to obtain class certification." *Carolina Youth Project*, 60 F.4th at 779 (quoting 1 Rubenstein *supra*, § 2:3 & n.15 (citing cases)); *see also Fernandez,* 116 F.4th at 295 ("[W]e have analyzed standing in the early stages of a class action based on the allegations of personal injury made by the named plaintiffs[.]" (internal quotation marks and citation omitted)). At the class certification stage, district courts therefore need not find that all of the unnamed class members possess Article III standing. This conclusion does not suggest that unnamed class members are exempted from Article III's standing requirement. To the contrary. Each class member must possess Article III standing to recover damages. *TransUnion, LLC v.*

---

[6] The Supreme Court has declined to reach "the distinct question [of] whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 431 n.4 (2021). Following *TransUnion*, the Supreme Court granted certiorari in *Laboratory Corporation of America Holdings v. Davis* to settle this question amidst a growing split in the circuits. 605 U.S. 327, 328 (2025). It subsequently, however, dismissed the case as improvidently granted. *Id.* The Court also recently denied certiorari in a case raising the same question. *Takeda Pharm. Co. v. Painters & Allied Trades Dist. Council 82*, No. 23-55742, 2025 WL 1683472, at *4 (9th Cir. June 16, 2025), *cert. denied*, No. 25-625, 2026 WL 795106 (Mar. 23, 2026).

*Ramirez*, 594 U.S. 413, 431 (2021); *see also Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 431 (4th Cir. 2025).[7]

Standing is a "doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). It "ensure[s] judges attend to actual harms rather than abstract grievances." *Wells v. Johnson*, 150 F.4th 289, 298 (4th Cir. 2025) (quoting *United States v. Texas*, 599 U.S. 670, 686 (2023) (Gorsuch, J., concurring in judgment)). Evaluating the class representative's Article III standing at class certification fulfills this constitutional obligation without unnecessarily overburdening the judicial system. Wexford's approach, by contrast, would require district courts to identify each unnamed class member and determine whether each suffered a cognizable injury *prior* to class certification. This practice would "put[ ] the cart before the horse in a way that would vitiate the economies of class action procedure; in effect the trial would precede the certification." *Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 676 (7th Cir. 2009). Accordingly, where as here, a Named Plaintiff has standing to bring the claim that is the subject of the class action, Article III standing is satisfied at the class certification stage.

[7] Wexford argues that this court's ruling in *Alig v. Rocket Mortgage, LLC*, stands for the proposition that standing must be found for each class member as a precondition of class certification. Opening Br. at 55 (citing 126 F.4th 965, 974 (4th Cir. 2025)). Wexford's reading of *Alig* is incorrect. As this court noted, following *Alig*, neither the Supreme Court nor our own circuit has held that every class member must demonstrate standing at the time of class certification. *Mr. Dee's, Inc.*, 127 F.4th at 934. In accordance with Article III's requirements, *Alig* held that "to recover damages from the defendants, [e]very class member must have Article III standing for each claim that they press." 126 F.4th at 974 (internal quotation marks and citation omitted). Thus, if, as Wexford contends, some members of the class are ultimately found to lack Article III standing, such individuals will properly be excluded from the class when their lack of standing becomes apparent.

Accordingly, the district court did not abuse its discretion in certifying the Damages Class without making individualized determinations about the standing of each unnamed class member.

We therefore turn to predominance. Concerns about potential uninjured, unnamed class members are more appropriately addressed in the context of analyzing whether the proposed class meets Rule 23(b)(3)'s predominance requirement. If a class includes some percentage of uninjured class members, then the proposed class may lack predominance. *Mr. Dee's, Inc.*, 127 F.4th at 934 (upholding denial of class certification for failure to meet the predominance requirement where approximately one-third of class members lacked a cognizable injury); *see also Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156–58 (3d. Cir. 2023) (holding that a disproportionate percentage of uninjured members can "affect the balance of common versus individual issues for purposes of predominance" under Rule 23's requirements).

The district court acknowledged that some uninjured individuals may be encompassed within the proposed class, but noted that such class members would be "[o]utliers" and therefore would not defeat predominance. *Spurlock*, 2025 WL 2085053, at *10–11. Notably, the district court narrowed the class definition to reduce or eliminate altogether the potential for uninjured class members. Under the district court's class definition, all members of the Damages Class must have been denied their own MOUD prescription or consideration for MOUD treatment. Wexford presents no concrete evidence to support its contention that uninjured class members would be anything but outliers. Mere conjecture about hypothetical uninjured class members cannot defeat predominance. *See*

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate."). If discovery reveals that uninjured class members are more than mere outliers, the district court could then revisit whether the class meets the requirements of Rule 23. *See* Fed. R. Civ. P. 23(c)(1)(C).

*iv. Separating class certification from the merits analysis*

Finally, Wexford contends that the district court abused its discretion by failing to delve sufficiently into the merits before certifying the Damages Class. We disagree.

While class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351), it is not appropriate to treat class certification as a merits-determination or to delve into the merits further than necessary to satisfy the requirements of Rule 23. *See Williams*, 59 F.4th at 91 (declining to consider defendant's arguments because "at the class certification stage, courts may not engage in free-ranging merits inquiries" (internal citations and quotation marks omitted)).

The district court declined to reach several of Wexford's arguments, finding them premature. This was not an abuse of discretion. Wexford's argument with respect to it had ultimate policymaking authority or whether the class members suffered a constitutional injury, are merits determinations. As we have said, at the class certification stage, the court need only determine "whether the Rule 23 requirements have been satisfied without considering whether the proposed class is likely to prevail on the merits." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024). A district court

should only reach merits questions "to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Glover v. EQT Corp.*, 151 F.4th 613, 618 (4th Cir. 2025) (quoting *Amgen*, 568 U.S. at 466). The district court did not abuse its discretion here.

In considering the motion for class certification, the district court studied the copious materials submitted by the parties to determine whether each requisite element of Rule 23 was satisfied. Furthermore, the district court expressly signaled the possibility of further narrowing the class definitions—or reassessing class certification altogether—upon completion of discovery. *Spurlock*, 2025 WL 2085053, at *8–10, *18. Determinations of class certification "are not frozen once made," rather, "Rule 23 empowers district courts to 'alte[r] or amen[d]' class certification orders based on circumstances developing as the case unfolds." *Amgen*, 568 U.S. at 479 n.9 (quoting Fed. R. Civ. P. 23(c)(1)(C)). We find no abuse of discretion in the district court's certification of the Damages Class at this stage.

## III. Conclusion

We remand for the district court to consider, in the first instance, whether the Named Plaintiffs have standing to represent the Injunctive Relief Class and affirm the district court's certification of the Damages Class.

*AFFIRMED IN PART AND REMANDED IN PART*